The plaintiffs herein are the two children of Benjamin Irving Shapiro and Belle Rebecca Shapiro, both deceased, who inherited as part of their parents' estate, a vendor's lien and mortgage promissory note which bore on certain property involved in this suit and which had been sold by their *Page 26 
father on June 20, 1938, to the defendant, W.C. Kimbrough. The note, which represented the credit portion of the purchase price of the property, $1,800, was for the sum of $1,500 and was made payable in monthly installments of $50 each, beginning July 1, 1938, with interest at six per cent, and it also provided for attorney's fees in the additional sum of ten per cent on the aggregate of principal and interest, for costs of collection. There was no acceleration clause in the note itself nor in the act of mortgage with which it was identified.
Certain payments aggregating the sum of $400 were made on account of the principal of the note, but on April 8, 1940, more than a year having elapsed apparently since any payments had been made, J.M. Kaplan, who had then qualified as the duly appointed dative tutor of the plaintiffs, filed suit against Kimbrough for the amount of the installments which had then matured and remained unpaid, reserving the right to later sue for the installments which had not yet become due. Kimbrough did not contest the suit and on May 16, 1940, judgment was rendered against him by default for the sum of $1,150, the total amount of the installments which had matured up to that time, less credit for those installments he had paid, with interest and attorney's fees.
In the meantime the Administrator of the Division of Employment Security of the Department of Labor, State of Louisiana, had filed certain liens for amounts claimed for contributions due by W.C. Kimbrough under the Louisiana Unemployment Compensation Law (Act No. 97 of 1936, as amended), these liens amounting to the sum of $1,824.50. On June 8, 1940, the tutor of the minors caused a writ of fieri facias to issue against the property on the judgment which had been obtained in their favor but on the day on which the sale was to take place, July 20, 1940, when the mortgage certificate which was read disclosed the liens which had been recorded by the Division of Employment Security of the Department of Labor, he had the property withdrawn from the offer for sale and the seizure was released.
On November 15, 1940, the Administrator of the Division of Employment Security filed a suit against Kimbrough in which he obtained judgment against him on December 13, 1940, for the amount, and with recognition of, the liens which he had had recorded. That judgment was duly recorded in the Mortgage Records of the Parish of Lafayette, in which the property is situated, and on January 14, 1941, the Administrator had execution to issue, causing the property to be seized and advertised for sale. On February 5, 1941, before the sale could take place, the plaintiffs herein, acting through their tutor, filed the present suit against W.C. Kimbrough with the object of having the sale of the property made by their father to him on June 20, 1938, dissolved on account of the nonpayment of the purchase price and to have the same returned to them free from any encumbrances placed thereon subsequent to that sale and likewise free and clear of any claims by any subsequent third parties who may thereafter purchase the same. On the day that suit was filed, they also caused to be recorded in the Mortgage Records of the parish a notice of lis pendens. On February 8, 1941, at public sale under execution of the judgment in favor of the Administrator of the Division of Employment Security, one Edwin Butcher became the purchaser and adjudicatee of the property for the price and sum of $1,500. Before the sale took place, the notice of lis pendens which had been recorded was read by the sheriff to the bystanders.
The issue in controversy in this suit arises out of the intervention of the Administrator of the Division of Employment Security, who claims priority in rank of the liens which had been recorded against the property, over and above the right of the plaintiffs to have the sale made by their father in June, 1938, rescinded.
The case was tried on an agreed statement of facts on which the trial court rendered judgment in favor of the plaintiffs dissolving the sale and restoring the property to the plaintiffs free and clear of any and all encumbrances and particularly of the liens which had been recorded against the defendant by the intervenor. From that judgment the intervenor has taken this appeal.
All the facts leading up to the filing of the present suit which have been recited herein are embodied in the agreed statement of facts which, in addition, contains another stipulation to the effect that the property had a rental value which more than offset any amount which the purchaser, Kimbrough, may have paid on account of the purchase price. Further it is stipulated that the promissory note had never *Page 27 
been disposed of by plaintiffs' deceased father and mother, that it formed part of their estate which was inherited by the plaintiffs, and that they have continuously held it ever since. Also it is stipulated that in the event the sale should be dissolved, plaintiffs have consented to the cancellation of the judgment which they have obtained against Kimbrough and that they have authorized the Clerk of Court to erase the same from the mortgage records of his office, all to the end that he may be placed in the same position he occupied before the sale of the property to him by their father in June, 1938. Finally it is stipulated that, besides this property, Kimbrough owned land in Iberia Parish appraised at $15,000 which was subject to the liens and mortgage of the Administrator of the Division of Employment Security and that said property was seized on the judgment obtained against him by that agency and sold at public auction, at a second offering, for $500, cash.
As already stated, one of the questions at issue involves the rank of the liens which had been recorded by the State agency known as the Division of Employment Security, Department of Labor, against the vendee of the property, in relation to the right of the plaintiffs to claim the dissolution of the sale made to him long prior to the recordation of those liens. Besides, there has to be considered a plea of estoppel urged by the intervenor and based on the previous suit filed by the plaintiffs on the note which they own and which is secured by vendor's lien and mortgage on the property, and also a plea of res adjudicata growing out of that same suit.
[1] Strictly speaking, it is not a question of the ranking of privileges with which we are concerned in this suit. It is rather with the right of a seller to have a sale dissolved and the property restored to him in the face of existing encumbrances recorded against the purchaser after the sale. Counsel for intervenor cite cases in which liens in favor of the State or some of its agencies were held to outrank a vendor's lien and mortgage, but in none of them was the resolutory condition involved. On the other hand the jurisprudence is clear on the point that where the seller seeks to exercise the right granted to him by our Civil Code, to have the sale dissolved for nonpayment of the purchase price, he is entitled, if he can place the buyer in the same position that he was before the sale, to have the property restored to him free and clear of any and all mortgages and charges placed thereon during the purchaser's possession as owner, regardless of their nature or character.
The right to enforce the resolutory condition is provided for in at least two articles of the Civil Code. Article 2046, which stipulates that the condition is implied in all commutative contracts, provides that it is to take effect "in case either of the parties do not comply with his engagements; * * *." In that event, however, "the contract is not dissolved of right; the party complaining of a breach * * * may either sue for its dissolution, with damages, or, if the circumstances of the case permit, demand a specific performance." Article 2561 provides that "if the buyer does not pay the price the seller may sue for the dissolution of the sale." The effect of the resolutory condition is stated in Articles 2045 and 2130 of the Code. Article 2045 reads in part, as follows: "The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed." Article 2130 reads in part as follows: "Obligations are extinguished: * * * By the effect of the dissolving condition, which has been explained in the preceding chapter."
[2, 3] From these various provisions of our Code it would appear that this right of dissolution granted to the seller is one peculiar to our civil law, and that being so, the question as to whether there may be any conflict, in the exercise of the right, with the exercise on the part of the seller of his vendor's lien and mortgage under a credit sale, which is also a creature of the civil law, would seem to be rather pertinent. Happily for us, however, the question is one which entails no serious difficulty at this time, as it has long ago been settled in the jurisprudence of this State that the two rights are not to be confounded. In the case of Johnson v. Bloodworth, 12 La. Ann. 699, the action was one for the dissolution of a sale of a slave. The sale was one under private act and it had not even been recorded. The main contention of the mortgage creditor who was resisting the dissolution rested on the fact of non-registry, but the court rejected the contention, stating in effect that even though it was true that the seller of an immovable *Page 28 
could only preserve his privilege as against third persons by recording the act of sale, yet "it is impossible to confound the resolutory action with the vendor's privilege. The former is not a mere appendage of the latter. It is a distinct substantive, and independent right or remedy." That case was cited with approval on the question of registry in Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906, 907, in which the court also stated that in an action for dissolution, "the true test (is) the return to the purchaser of that portion of the price he has paid, and his complete discharge as to the remainder, the unpaid portion of the price." Cases are therein cited to show that the right to rescind the sale is effective against subsequently recorded mortgages granted by the vendee, and Stevenson v. Brown, 32 La. Ann. 461, 462, is noted as authority to the effect that even though the property has passed from the vendee into the hands of a third party that does not abridge the right to dissolution. "The underlying principle" the court states "is that until the vendee pays the purchase price he holds by a defeasible title only, and all who deal with him are equally affected."
[4] We do not agree with counsel for the intervenor that because the lien recorded in its favor was one arising under special law of the State that it was of a superior status and could not be affected by a rescission of the sale of the property from the defendant, against which it operated. Under the theory that until defendant had paid the purchase price of the property, he held by a defeasible title only, and that all who dealt with him were equally affected, there is no reason why the intervenor or anyone else should be favored. In the case of Adler v. Adler, 126 La. 472, 52 So. 668, it is stated: "That the judicial dissolution of a sale of real estate for nonpayment of the [purchase] price frees the property from all mortgages and charges created by the purchaser, or resulting from his possession as owner, and the operation of law, is too well settled for dispute. See Chretien v. Richardson, 6 La. Ann. [2], 3, and authorities there cited." (Italics ours.)
[5] Counsel also call our attention to Act No. 133 of 1942 which amends Act No. 97 of 1936, the law creating the Division of Employment Security, in respect to the rank of the lien therein provided for. Under a prior amending act, Act No. 164 of 1938, it was provided that the statement of the amount of contribution due by a defaulting employer, when filed for record, "shall operate as a first lien, privilege and mortgage on all of the real property of the employer * * *." The amending act makes the lien operative as a first lien, privilege and mortgage from the date of filing only and further provides that it "shall not affect liens, privileges, chattel mortgages, or mortgages already affecting or burdening such property at the date of such filing." Act No. 133 of 1942. As intervenor's lien was filed for record prior to the enactment of the amending law it is urged that it enjoyed the status of a first lien as provided for in the original statute. Granting that to be so it would only give the lien a rank superior to those liens, privileges and mortgages already affecting or burdening the property at the dates on which they were filed but it cannot be implied, from the amending law, that the Legislature was attempting to declare that prior thereto, this kind of lien enjoyed a status in relation to the right of dissolution, different from that of any other kind of lien, mortgage or other encumbrances. Certainly, in our opinion, the Legislature did not intend to state that prior to the amendment, the law regarding the status of these liens, as they might have affected the right for dissolution of a sale, was any different from what it had been held to be in a jurisprudence so well settled and recognized for such a long time.
[6] We understand counsel to also argue that to permit resort to the action for dissolution on the theory that the purchaser, under a credit sale with vendor's privilege and mortgage, obtains a defeasible title only, as it is referred to in several cases, would be in effect an acknowledgment of the common law contract of conditional sale which does not exist under our own system of law. But there is a vast difference between the common law conditional sale and our sale in Louisiana on terms of credit. Primarily the difference is that under the conditional sale the seller contends that he is entitled to whatever payments the purchaser has made, in addition to retaining title to the property until it is all paid for, whereas under our law, title, even though defeasible, passes at the time the sale is made regardless of the credit portion of the purchase price, and all that the vendor retains is a privilege and mortgage on the property to secure the payment of the credit portion. To regain title in case of nonpayment by the purchaser he must judicially enforce either of two *Page 29 
rights which the law gives him. He must either exercise his right under the vendor's lien and mortgage which he holds, or he must bring suit for dissolution of the sale, in which it must be shown that he can make full restitution to the purchaser for all that he has paid and he must also further relieve him of all obligations thereunder. As pointed out in cases we have referred to and in several others, these two rights are absolutely separate and independent of each other.
[7, 8] The issues raised under the pleas of estoppel and of res adjudicata may easily be disposed of by referring to the law as laid down in the case of Canal Bank v. Copeland,15 La. 75. After stating that under our law there is no inconsistency in suing for the rescission of a sale, after having claimed the price without success, and referring to the articles of the Civil Code relative to putting in default, the court stated that "it should seem that a previous suit for the specific performance of a contract, far from being a bar to a subsequent action for its rescission, is by our law considered as one of the preliminary steps to be resorted to." Further the Court stated that in its opinion a previous judgment, such as the one plaintiffs had obtained against defendant, was no bar to the action then before it, that is, the action for rescission, the same as we have here, and that it only had the effect of putting the defendant more completely in mora. How far a vendor must go beyond obtaining judgment is not clearly shown, but it strikes us that if he does as much as to seize the property and advertise it for sale, as was done in the present case, and the vendee does not move, a fair presumption would be that he does not intend to comply with its terms.
[9] There is no merit in intervenor's contention on the plea of estoppel that the plaintiffs idly sat by when the property was sold under its judgment. Not only did they file suit for the resolutory condition before that sale took place but they also filed and had recorded a notice of lis pendens and on the day of the sale had that notice read as a warning to whoever purchased the property that he would acquire it with that knowledge before him.
We are of the opinion that the judgment appealed from is correct and for the reasons stated it is affirmed at the costs of the intervenor, appellant herein.