LANDRY, Judge.
This appeal by plaintiff, Bob Henry (Appellant), is from judgment ordering *208 dissolution of a contract whereby Appellant transferred corporate shares of Paramedical Career Academy, Inc. (Paramed) to defendants, Jim Hodges, Dick Jauregui and John Brewer (Appellees), the dissolution and return of shares to Appellant being conditioned upon Appellant making certain restitution to Appellees. Defendants have neither appealed nor answered plaintiff’s appeal. We affirm.
From inception, all litigants have treated the contract as a sale of corporate shares. In seeking relief, Appellant urges and relies upon those codal articles which prescribe the relief available to a vendor in the event of a purchaser’s breach of a sales contract. For reasons hereinafter noted, we find that the contract in question was not a sale.
Plaintiff prays only that the “sale” of the stock be rescinded. Defendants’ answer is a general denial. In reconvention, defendants assert their obligation to invest in Paramed and aver investments aggregating $15,420.00, which they claim alternatively in the event of judgment for plaintiff.
It is undisputed that on June 21, 1973, Appellant owned 90% of the shares of Paramed, a corporation operating a health occupational school to train medical receptionists, nurses assistants, doctors assistants and allied positions in the health field. The other 10% of Paramed’s stock was owned by Hodges. At this time the school, which was operated in a building leased from Appellant and Appellant’s mother, was in distress. The institution was threatened with closure because of its inability to provide either a surety or cash bond of $10,000.00 to obtain a state license, which license was essential to Federal accreditation, which was also vital to the continued operation of the institution. In addition, Paramed was delinquent in payment of current operating expenses. It also appears that during the prior period of operation, Appellant had personally obligated himself for considerable sums which were advanced to Paramed.
On June 21, 1973, by verbal agreement, Appellant transferred 5% of Paramed’s shares to Hodges, 33% to Jauregui and 32% to Brewer, retaining 20% of the corporation’s shares for himself. It is agreed that no cash purchase price was involved, and that Appellant received no monetary remuneration whatsoever. It is agreed that the terms of the contract were that Appellees would undertake active management of the institution under the supervision of Jauregui, who successfully managed a similar institution in San Antonio, Texas. In return for the stock transfer, Appellees agreed to undertake to secure the bond required to obtain state licensing essential to Federal accreditation and continuance of the school. Appellees further agreed to invest in the corporation sufficient funds to insure its continuance, and also agreed to personally assume liability for certain outstanding corporate obligations. The only dispute between the parties lies in this latter area, namely, the amount and character of obligations for which Appellees assumed liability.
At the time of stock transfer, it is conceded that Paramed owed approximately $6,200.00 in outstanding current bills for such items as advertising and general office and operating expenses. It is also conceded that payment of these obligations was assumed by Appellees. Additionally, Paramed owed a large balance on a Small Business Loan .in the original sum of $24,500.00 obtained through Capital Bank, Baton Rouge, Louisiana, for which obligation Appellant was personally bound. Par-amed also owed a balance of $1,500.00 on a note held by City National Bank and $1,000.00 on a note held by Family Finance Company, both of said obligations having been guaranteed by Appellant. Appellees maintain they did not agree to assume personal liability for the SBA loan or the loans by City National Bank and Family *209 Finance. Appellant contends these latter obligations were assumed by Appellees.
Appellant concedes the contract was negotiated principally through Hodges who represented Brewer and Jauregui. Appellant testified that Appellees understood they were to assume liability for the delinquent current expense liability of the corporation as well as to relieve Appellant from personal liability on the balances due Capital Bank, City National Bank and Family Finance. In essence Appellant testified he would not have transferred his stock under any other arrangement.
Hodges acknowledged he did most of the negotiation with Appellant, but denies that either he, Hodges, or either of the other two defendants agreed to assume Appellant’s personal liability on the amounts owed Capital Bank, City National Bank or Family Finance. He explained that the principal consideration for the transfer was transferees’ promise to solve the licensing problem which threatened closure, provision of expert supervision, the infusion of sufficient operating capital and payment of current obligations which amounted to about $6,200.00, according to a list furnished by Appellant. Hodges denied any intent to assume Appellant’s personal obligation on the notes held by Capital Bank, City National Bank and Family Finance.
Brewer’s testimony is essentially that he agreed to obtain the required bond which he was able to do because of his experience, knowledge and connections, which function he performed. He also stated he was to furnish supervision and provide operating capital, but that he did not assume payment of the amounts due Capital Bank, City National Bank and Family Finance. He was aware of the amounts due the latter two concerns, but stated he had no knowledge of the SBA loan from Capital Bank until he heard the loan mentioned at trial.
Jauregui’s testimony is to the effect that he agreed to pay the $6,200.00 outstanding current expenses owed by Paramed, but did not agree to assume liability for any personal debts owed by Appellant. He further stated that the matter of plaintiff’s personal obligation on account of funds advanced to Paramed was never discussed.
Allie Pogue, Vice President, Capital Bank, testified that at the time of the transfer, the matter of the SBA loan was discussed with Appellant and Hodges. From the discussion, Pogue formed the impression that the transferees of the stock agreed to assume liability for the balance due on this loan on which Appellant was liable. He acknowledged that some confusion arose at this time concerning whether Paramed, as a corporation, was liable on the SBA note which had been drawn in the name of Bob Henry d/b/a Paramedical Career Academy, which fact was then first brought to his attention. He confirmed that Appellant was personally liable on this note.
Mr. Frank Foil, attorney for Appellees, was apparently the first to discover that the SBA loan was perhaps not an obligation of Paramed based on the technicality that said concern was a corporation, and that the obligation had not been incurred either in the corporate name or with proper corporate authority. He so informed Appellees, including Brewer. In this latter regard, it is significant that Mr. Foil flatly contradicts Brewer’s testimony wherein Brewer stated he had no knowledge of this loan until the time of trial.
It is conceded by all concerned that the proceeds of the SBA loan, the City National Bank Loan and the Family Finance loan were all used by Appellant in the operation and/or purchase of equipment for the school. Neither the amounts of the loans nor balance due are disputed. Appel-lees acknowledge their failure to pay the three disputed accounts. They seek to justify said failure on the ground that these obligations were not assumed.
Following the stock transfer, Appellees made numerous investments in Paramed ei *210 ther by direct loans to or by deposits to the corporation’s bank account of Appellees’ personal funds or the proceeds of loans which Appellees endorsed. In some instances Appellees were repaid with corporation funds; corporation funds were also used to defray some of the loans whose proceeds were used for corporate purposes. The record establishes that at the time this litigation commenced there remained the following outstanding balances on loans acquired by Appellees, the proceeds of which loans were invested in Paramed, and which loans were personally guaranteed by Ap-pellees either individually or collectively: $4,640.00 due on a loan made July 20, 1973 by Investors Finance Services; $1,833.31 due on loan from Capital Bank in August, 1973, and $4,987.50 due on a January, 1974 loan obtained from Louisiana National Bank. These transactions totalled $11,-460.81. The record also shows that Brewer and Hodges invested personal funds in the amounts of $2,500.00 and $2,250.00, respectively, none of which has been repaid.
The trial court concluded that Appellees agreed to assume the personal liability of Appellant on obligations in dispute, and also that Appellees breached their obligation in this respect. The trial court also found, however, that Appellees had rendered all other services which they had undertaken to perform, including obtaining a bond, state license and national accreditation for the school, operation of the school and investment of funds therein. In short, the trial court found Appellees had partially performed the obligations incumbent upon them. The lower court reasoned that said partial performance entitled Appellees to equitable consideration, and upon this premise ordered rescission of the transfer and return of the stock to Appellant conditioned upon Appellant’s refunding Brewer the $2,500.00 personally advanced by Brewer and remaining unpaid, and the sum of $2,250.00 advanced by Hodges and remaining unpaid, and further conditioned upon Appellant’s assumption of the $11,406.81 remaining due on the hereinabove mentioned loans.
Appellant has appealed only that portion of the judgment ordering restitution of the sum due Brewer and Hodges personally, a total of $4,750.00, and ordering plaintiff to assume liability for the $11,460.81 loan balances for which Appellees are personally bound.
Appellant contends the transaction was a sale and the breach found by the trial court entitled him to rescission and restoration to his former position. Invoking LSA-C.C. art. 2561; Shapiro v. Kimbrough, La.App., 20 So.2d 24, and Cahow v. Hudges, La.App., 169 So. 801, affirmed, La.App., 173 So. 471, Appellant contends he is entitled to judgment, as seller, restoring him to possession of the subject of the sale free and clear of any charges placed thereon by Appellees during Appellees’ possession as purchaser.
We find that the transaction in question was not a sale. LSA-C.C. art. 2439 defines the contract of sale as follows:
“The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.”
In this instance, the stock transfer was not given for a stated price payable in current money. Appellant received no money whatsoever for the transfer. The consideration given by the transferees was the performance of certain acts which included, inter alia, payment of debts owed by Paramed to third parties and the assumption of certain obligations incurred by Appellant to provide funds for Paramed’s operation.
Since this is not a contract of sale, Appellant is not entitled to the right of rescission and other relief provided by LSA-C. *211 C. art. 2561, in those instances wherein a purchaser fails to pay the agreed price of a sale contract.
The contract involved herein may be generally classified as a commutative contract pursuant to LSA-C.C. art. 1768, which provides:
“Commutative contracts are those in which what is done, given or promised by one party, is considered as equivalent to, or a consideration for what is done, given, or promised by the other.”
Our general rules governing contracts are found in LSA-R.C.C. Title IV, Of Conventional Obligations, Articles 1761-2289. Included therein are the following pertinent provisions:
“Art. 1777. Contracts in general, under whatever denomination they may come, and whether they may or may not be included in any of the above divisions, are regulated by certain rules, which are the subject of this title.”
“Art. 1778. Certain contracts are regulated by particular rules which are established in the parts of the Code which treat of those contracts.”
The general rules governing dissolution of contracts which are not subject to regulation by specific codal provisions are contained in LSA-C.C. 2045 through 2047, which state:
“Art. 2045. The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place.”
“Art. 2046. A resolutory condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution with damages, or, if the circumstances of the case permit, demand a specific performance.”
“Art. 2047. In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolu-tory condition is an event, not depending on the will of either party, the contract is dissolved of right; but, in other cases, it must be sued for, and the party in default may, according to circumstances, have a further time allowed for the performance of the condition.”
The foregoing codal provisions do not grant the absolute and unconditional right to dissolution upon breach of contract. On the contrary, our jurisprudence establishes that when a contract is breached, the courts are authorized, within their sound discretion, either to grant dissolution or to allow defendant additional time to perform the breached obligation. Thompson v. Bullock, La.App., 236 So.2d 892, and authorities therein cited.
In this instance, the trial court deemed the breach sufficient to warrant dissolution. We concur in this determination because it appears that Appellees failed to pay approximately $27,000.00 in obligations which Appellees assumed, and which assumption was a prime motive for Appellant’s agreement to transfer the stock.
Appellant complains only that the trial court erred in requiring reimbursement to Appellees for the personal funds invested by Appellees in Paramed, and for personal liability assumed by Appellees for loans made to Paramed while Appellees were owners of the stock conveyed. Appellant urges entitlement to restoration of the stock without the necessity of restitution.
*212 In this instance, Appellant’s remedy of dissolution is based on the implied reso-lutory condition contained in all commutative contracts pursuant to LSA-C.C. arts. 2045-2047, inclusive. According to Article 2045, above, when this implied condition is invoked for breach of a contractual obligation, all obligations of the contracting parties are revoked; the parties are placed in the same condition as though the mutual obligations had not existed, and each party is required to return that which he received under the agreement. Such a result is ordinarily easily accomplished where the contract is a sale, an exchange, or a contract to give. (See LSA-C.C. art. 1905.) However, restoration of things received becomes more complicated and difficult where the contract calls for performance, especially where the acts to be done cannot be undone, or where partial performance has been made and the valuation of such services or acts is difficult to assess.
In return for the transfer of Appellant’s stock, Appellees agreed to perform several acts: (1) bond the school; (2) obtain a license for the institution and accreditation by Federal authorities; (3) provide expert management for the operation and supervision of the school; (4) assume approximately $6,200.00 current bills owed by Par-amed; (5) invest sufficient funds in the corporation to assure its continued operation, and (6) assume approximately $27,000.00 personal obligations of Appellant for Paramed’s debts. Appellants performed enumerated obligations 1 through 5, above. The record establishes beyond doubt that Appellees’ performance saved the school from closure, improved its public image and placed the institution in far better status than the institution enjoyed at the time of the transfer. It is obvious that such services, save that of investment of funds, cannot be undone or the monetary value thereof precisely determined. It is equally obvious that Appellant’s stock has enhanced in value to an indeterminate degree as a result of Appellees’ partial performance. Under the circumstances, the restitution ordered by the trial court is the only practical way Appellant can restore that which he received, which restoration is required pursuant to LSA-C.C. art. 2045. The obligation to restore that which was received is supported by both doctrinal writings and jurisprudence. Scott v. Apgar, 238 La. 29, 113 So.2d 457; Thompson v. Kilcrease, 14 La.Ann. 340; Thompson v. Bullock, above; Vanzant v. Morgan, La. App., 181 So. 660; Monroe, The Implied Resolutory Condition for Non-Performance of a Contract, 12 Tulane L.Rev. 529.
The judgment of the trial court is affirmed at Appellant’s cost.
Affirmed.