UNITED STATES of America

v.

Samuel F. MANISCALCO, Jr., et al.

Civ. A. No. 78–804.

United States District Court,
E. D. Louisiana.

Oct. 15, 1981.

Michaelle F. Pitard, Asst. U. S. Atty., New Orleans, La., for plaintiff.

C. Joseph Murray, New Orleans, La., for defendant Wanda Stumpf.

## OPINION

ARCENEAUX, District Judge.

Plaintiff, United States of America ("Government") has brought suit to judicially enforce a tax lien on a house and lot bearing municipal number 7621 Hickory Street, New Orleans, Louisiana. Defendant and cross-plaintiff Wanda D. Stumpf asserts a claim to that property. Prior to the trial on the merits, the Government entered into a consent judgment with the primary defendants, Samuel F. Maniscalco, Jr. ("Maniscalco") and his wife Gaynell Putfark Maniscalco, who consented to judgment being entered against defendant Maniscalco for unpaid federal tax liabilities accrued as the result of illegal gambling activities in the amount of $148,132.15 plus interest. The agreement also entitled the Government to foreclose its federal tax lien against any interest the Maniscalcos might have in the Hickory Street property.

Trial on the merits was held on April 2, 1981, before the Court without a jury. After reviewing the memoranda of counsel and the applicable caselaw, the Court now renders its decision.

## FACTS

A brief perusal of the pertinent facts reveals a situation which more closely resembles the plot of a Hollywood film melodrama than a federal court revenue collection claim.

The scenario is generally this:

On December 5, 1972, the Internal Revenue Service ("IRS") made an assessment against Maniscalco for unpaid wagering taxes plus statutory interest for the taxable

periods ending August 31, 1971 and January 31, 1972. These claims, totalling $148,132.15, had their origin in information resulting from wiretap investigations conducted by the Federal Bureau of Investigation ("FBI"), which implicated Maniscalco in illegal gambling activity. Maniscalco pleaded nolo contendere in a subsequent criminal prosecution and was placed on probation.

Mrs. Stumpf is a widow whose deceased husband, Maniscalco's "best friend", died in 1968. Mrs. Stumpf had succeeded to full ownership of the Hickory Street property by virtue of her community interest as to one half, and her inheritance of the remaining half through the succession of her deceased husband. The house was subsequently placed under mortgage by Mrs. Stumpf to secure a loan from a New Orleans homestead association.

A short while after her husband's death, Mrs. Stumpf found herself faced with illness, financial difficulties, and responsibility for the continued support and well-being of her aged mother-in-law, who resided at the Hickory Street address. When problems became seemingly insurmountable for her, she decided to place her trust in Maniscalco and asked him for help in 1971.

Maniscalco agreed to take over the payments on the Hickory Street mortgage on the magnanimous condition that Mrs. Stumpf *convey* the property to him in accordance with his view of "common business sense". The sale with assumption of mortgage, dated July 20, 1971 and recorded on August 9, 1971, reads in pertinent part:

This sale is made and accepted for and in consideration of the price and sum of EIGHT THOUSAND FOUR HUNDRED TWO AND 35/110 ($8,402.35) DOLLARS, represented by the assumption and discharge, in accordance with its terms and conditions of that certain mortgage note drawn by MRS. WANDA DAVIS, WIDOW OF CHARLES T. STUMPF in the original sum of TEN THOUSAND FOUR HUNDRED FIFTY AND NO/100 ($10,450.00) DOLLARS, (now reduced to $8,402.35) bearing interest at the rate of ten (10%) per cent per annum from maturity payable in 119 equal and successive monthly installments of EIGHTY SEVEN AND 10/100 ($87.10) DOLLARS per month, commencing August 11, 1969 and the 11th day of each month thereafter, with a balance due and payable on the 120th month; said note being identified with an Act of Mortgage before Beryl E. Wolfson, Notary Public, dated July 11, 1969, recorded in MOB 2165, folio 83, Parish of Orleans, Louisiana.

Mrs. Stumpf's mother-in-law continued to occupy the property as she had before the sale.

The testimony adduced at trial revealed that rent was never considered by either Maniscalco or Mrs. Stumpf at any time. Mrs. Stumpf considered the arrangement to be a temporary one and intended to pay Maniscalco back for any money he "lent".

The federal tax lien was filed on December 6, 1972. Maniscalco testified that he made payments on the mortgage note pursuant to his assumption agreement from sometime in 1971 to February, 1973, when he learned of his difficulties with the IRS. When the Maniscalco payments stopped, Mrs. Stumpf commenced making the payments, her only alternative to possible foreclosure and ultimate eviction. Indeed, Maniscalco specifically told her that he would not make any further payments and for her to resume making the payments if she intended to live in the house. In this connection, it is abundantly clear under Louisiana law that the sale of mortgaged property with the purchaser assuming the mortgage-secured obligation does not relieve the original mortgagor of the obligation to pay. *Solomon v. Copping,* 112 So.2d 749 (La.App.1959). Because of this, upon Maniscalco's refusal to make further payments, Mrs. Stumpf became directly liable for the obligation. It was stipulated that Mrs. Stumpf continuously made payments on the note from February, 1973 until it was paid out in May, 1979. The mortgage was cancelled at that time. Her mother-in-law died in April, 1973, and Mrs. Stumpf moved into the house as her home.

Over the years, Mrs. Stumpf paid for repairs and improvements on the property as well as property taxes. Although she learned of the federal tax lien in 1974, she failed to contact anyone concerning the lien and her alleged interest in the property until August, 1980.

By cross claim, Mrs. Stumpf asserts that she is entitled to the dissolution of the sale of the property to Maniscalco with return of the property free and clear of the tax lien. Alternatively, she claims entitlement to a vendor's privilege which primes the tax lien asserted by the Government.

## LAW

It is clear that a federal tax lien such as that involved here attaches to all property and rights to property, whether real or personal, belonging to the taxpayer. 26 U.S.C.S. § 6321. Likewise, it is equally settled that the nature and extent of a taxpayer's interest in property is determined by state law. *Broday v. United States*, 455 F.2d 1097 (5th Cir. 1972); *United States v. Creamer Industries, Inc.*, 349 F.2d 625 (5th Cir. 1965), *cert. denied*, 382 U.S. 957, 86 S.Ct. 434, 15 L.Ed.2d 361.

We, therefore, direct our attention to the civil law tradition governing Louisiana property rights since the adoption of the first Civil Code of 1808. Since the defendant/cross-plaintiff Mrs. Stumpf is claiming a right to dissolve the sale, we focus first on La.Civ.Code arts. 2045, 2046, 2047 and 2561 and the related jurisprudence.

Article 2045 of the Civil Code clearly delineates the existence of a resolutory condition—i. e., a dissolving condition "which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the condition had not existed". The Code further provides that such resolutory condition is implied in all commutative contracts, to take effect when either party fails to fulfill his obligations under the contract. La.Civ.Code arts. 1768, 2046.

A right to enforce the Code-created resolutory condition is also provided in Article 2046 which specifies that the party complaining of a breach "may either sue for its dissolution with damages or, if the circumstances of the case permit, demand a specific performance".

Article 2561 amplifies on this concept. It declares:

> If the buyer does not pay the price the seller may sue for the dissolution of the sale. This right of dissolution shall be an accessory of the credit representing the price, and if it be held by more than one person all must join in the demand for dissolution; but if any refuse, the others by paying the amount due the parties who refuse shall become subrogated to their rights.

The effect of the resolutory condition is codified in Article 2130 which states that obligations are "extinguished" by the effect of the dissolving condition.

Louisiana jurisprudence recognizes the right of dissolution and the effect of the resolutory condition in cases involving failure to discharge a contracted obligation to assume a mortgage on immovable property. *Vanzant v. Morgan*, 181 So. 660, 666 (La. App.1938).

The prescriptive period for actions of dissolution under La.Civ.Code art. 2561 is the general ten-year prescriptive period relative to personal actions. La.Civ.Code art. 3544; *Toler v. Toler*, 337 So.2d 666 (La.App. 1976); *George v. Lewis*, 11 La.Ann. 654 (La.1856). In the case of credit or installment sales, the prescriptive period begins to run from the maturity of the first installment due. *Latour v. Latour*, 134 La. 342, 64 So. 133 (La.1914).

It is important to stress that this right to dissolve the sale for nonpayment possesses inherent differences from the related concept of the vendor's lien and mortgage under a credit sale. The right of dissolution is "peculiar to our civil law ... Happily for us, however ... it has long ago been settled in the jurisprudence of this state that the two rights are not to be confounded". *Shapiro v. Kimbrough*, 20 So.2d 24, 27 (La.App.1944).

THE CONFUSION HEREIN...

This Court is of the opinion that these unique creatures of the Louisiana civilian heritage *have* been confounded in the Government's argument presented to the Court in the case of Mrs. Stumpf.

█ Louisiana law recognizes special privileges on immovables. La.Civ.Code art. 3249. One such privilege is the vendor's privilege or lien which operates to protect vendors who sell property on credit. Only when the issue of liens or privileges is appropriately presented do questions of ranking or preference become relevant. La.Civ. Code arts. 3187, 3188. However, when the appropriate remedy is the dissolution of a sale, no issue of lien or privilege is presented and no ranking question is raised, for a dissolution operates to annul the sale and put the parties in the positions they respectively held prior thereto. In effect, the issue is the right to title, not an accessory right such as a lien or privilege.

█ The effect of a successful dissolution action brought under La.Civ.Code art. 2561 is annulment of the initial sale and return of the property free and clear of all encumbrances not placed thereon by the seller. *Sliman v. McBee*, 311 So.2d 248 (La. 1975); *Durham v. Evans*, 377 So.2d 423 (La.App.1979).

> That the judicial dissolution of a sale of real estate for nonpayment of the price frees the property from all mortgages and charges created by the purchaser, *or resulting from his possession as owner and the operation of law*, is too well settled for dispute.

*Adler v. Adler*, 126 La. 472, 52 So. 668 (La.1910) (Emphasis added). Since the right to claim a dissolution of the contract arises by the "operation of law", no recordation or similar conditions need be met as conditions precedent to its exercise. *Shapiro, supra* at 28.

Further, Louisiana jurisprudence teaches that:

> 'it is impossible to confound the resolutory condition with the vendor's privilege. The former is not a mere appendage of

the latter—it is a distinct *substantive, and independent right or remedy*'

*Shapiro, supra* at 28. (Emphasis added).

█ Therefore, it is clear that the seller's right to dissolve a sale is a substantive, separate and independent right which is irrelevant in a discussion of ranking of liens or privileges. The interest held by the seller, Mrs. Stumpf, is "a real and actual interest in the subject property." *Durham v. Evans, supra* at 430. This is at a level removed from the consideration of liens; in fact, it operates to place the parties in the position they would have occupied had the sale not taken place. All liens are extinguished; tax liens are no exception. *Shapiro, supra*.

> Strictly speaking, it is not a question of the ranking of privileges with which we are concerned in this suit. It is rather with the right of a seller to have a sale dissolved and the property restored to him in the face of existing encumbrances recorded against the purchaser after the sale.

*Shapiro, supra* at 27.

█ In short, Louisiana law affords a unique remedy to the uncompensated seller. Until the buyer has paid the purchase price of the property, he holds a defeasible title only, which can be successfully attacked and divested from him by a judicially-declared dissolution of the sale, and to the prejudice of rights acquired through the purchase by third parties.

█ This Court finds that Mrs. Stumpf is entitled to the dissolution of the 1971 sale to Maniscalco for non-payment of the contracted price, and therefore, the federal tax lien in question does not attach to the Hickory Street property as such.

The lien has attached, however, to the correlative right held by Maniscalco as announced in La.Civ.Code art. 2045 to have returned to him so much of the "purchase price" as he indeed paid. Thus, to the extent the "creditor" (Mrs. Stumpf) is obliged to restore to the buyer (Maniscalco) "what [s]he has received", as demanded in Article 2045 as a condition to revoking the obliga-

tion, those rights possessed by Maniscalco are subject to the Government's tax lien.

Evidence of the exact amount paid by Maniscalco on the contract with Mrs. Stumpf was not offered at trial. However, the Court has calculated this amount to total $1,567.80. This amount is comprised of eighteen (18) monthly payments of $87.10 from August 11, 1971, the first payment due under the assumption, to January 11, 1973, at which time Mrs. Stumpf resumed making the payments on the note.

## CONCLUSION

In summary:

1. While any lien in favor of the United States attaches to the property and rights to property belonging to a taxpayer, the nature and extent of the taxpayer's interest in the property so attached is determined by state law. 26 U.S.C.S. § 6321; *United States v. Creamer Industries, Inc., supra.* Any property right held by Mr. Maniscalco in the Hickory Street property is determined by the laws of the State of Louisiana, whose civil law tradition is unique among the 50 states.

2. Relevant Louisiana property law is firmly established by both civil code articles and jurisprudence. In addition to more traditional creditor rights, such as the vendor's lien or privilege, the Louisiana seller is afforded the right to dissolve a sale upon non-payment of the purchase price. La.Civ. Code art. 2561.

3. The relief afforded by the successful exercise of this right is total, from the seller's viewpoint: the property is not only returned to the seller, but it is *freed* from all liens and encumbrances placed thereon by the purchaser after the sale. *Shapiro, supra.*

4. Third party rights are no exception, since " . . . the judicial dissolution of a sale of real estate for nonpayment of the price frees the property from all mortgages or charges created by the purchaser or resulting from his possession as owner and the operation of law . . ." *Adler, supra,* and, indeed, " . . . free and clear of any mortgages or other encumbrances not placed thereon by the seller . . ." *Sliman v. McBee, supra.* It is also abundantly clear that at the time the Government recorded its tax lien on December 6, 1972, the mortgage which Maniscalco assumed was still of record and uncancelled. Considering the clear state of Louisiana law relative to resolutory conditions, and the right of an injured seller to dissolve a sale, it is difficult to see any merit to the Government's insistence upon its "third party innocence".

5. A condition precedent to the dissolution of a sale for non-payment of the price is the obligation of the seller to return to the purchaser as much of the purchase price as may have been paid prior to the dissolution.

6. Such amount is a right to which the Government's lien claims attach, and, in this case, is an amount due the Government by virtue of the consent judgment in favor of the Government and against Maniscalco.

Louisiana affords its sellers a powerful remedy when faced with a recalcitrant buyer. This Court believes that the equity and wisdom underlying the relief is only magnified when applied to the situation presented. The mere exposure of Mrs. Stumpf to any loss greater than the money actually paid by the self-confessed gambler is an unconscionable and unjust ordeal in itself. The protection extended to Mrs. Stumpf by the relevant articles of the Louisiana Civil Code could not have found a more suitable beneficiary.

Judgment will be entered accordingly.