**The C.M. THIBODAUX CO., LTD.**

v.

**UNITED STATES of America.**

**Civ. A. Nos. 88–1301, 88–4716.**

United States District Court,
E.D. Louisiana.

Oct. 10, 1989.

David Bruce Spizer, New Orleans, La., for plaintiff.

Steven Gremminger, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., and Eneid A. Francis, Asst. U.S. Atty., New Orleans, La., for U.S.

WICKER, District Judge.

Cross motions for summary judgment were heard by the Court on an earlier date. After considering the briefs and arguments of counsel, the applicable law and for reasons which follow, the Court GRANTS the defendant's motion for summary judgment; the Court DENIES the plaintiff's motion for summary judgment.

Summary judgment is appropriate when: the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(c).

In this case, there is no genuine issue as to any material fact. The parties entered into a Joint Statement of uncontested Material Facts and Stipulations, which is summarized below:

C.M. Thibodaux Co., Ltd. was incorporated in 1912 to purchase, hold, manage, and sell real estate for its shareholders. During the 1950's and 1960's, Thibodaux issued royalty dividends, transferring mineral royalty interests on properties owned by Thibodaux to its shareholders. Thereafter, royalty payments were made by the lessees to the stockholders, their heirs or other transferees.

On August 7, 1976, Thibodaux declared a property dividend of one hundred percent (100%) of mineral royalties in present or future mineral leases on certain property and executed a "Royalty Deed" which transferred mineral royalty interest in the property to the stockholders. Under the Royalty Deed, the mineral right would remain a charge and burden on the property and would be binding on any future owners or lessees of the property, but Thibodaux, as owner of the property, reserved the right to negotiate and enter into future leases and to amend current leases. Pursuant to that Royalty Deed, all royalty payments since August 9, 1976, have been paid directly to the stockholders. There is no dispute over the taxation of these royalty payments.

On June 13, 1981, Thibodaux transferred its right to receive any and all lease bonuses and delay rentals to the stockholders and executed an Amendment to Royalty Deed to provide for the direct payment to the shareholders of their proportionate share of all bonuses and delay rentals. The stockholders of record as of the date of transfer became owners of the rights to all bonuses and delay rentals but, as with the

royalty payments, Thibodaux reserved the right to negotiate and enter into future leases affecting the property. Specifically, the corporation reserved its

> executive rights, that is the right to negotiate, make and enter into any future oil, gas and mineral lease or leases affecting the whole of said lands ... without reference to or consultation with said stockholders.

All bonus and delay rental payments pertaining to the property since June 23, 1981, have been paid directly to the stockholders. The stockholders have included all royalty, bonus and delay rental payments in their gross income and have paid federal income taxes on this income. Thibodaux also included the bonus and delay rental payments in its gross income, paid taxes on that income under protest, and sought refund which was denied.

On March 22, 1988, Thibodaux filed suit [# 88–1301] to recover federal income taxes and interest which it believes it overpaid as a result of including bonus and delay rental payments in its income for taxable years ending Dec. 21, 1981, 1982, 1983, 1984 and 1987. [The Court did not have jurisdiction over the 1987 claim when # 88–1301 was filed because the IRS had not yet rejected Thibodaux's request for refund.] After IRS formally rejected Thibodaux's claim for refund for 1987, Thibodaux filed an additional suit [88–4716] seeking refund of overpayment for 1987. The two cases were consolidated.

The only issue then is whether Thibodaux should pay federal income tax as a matter of law on the lease bonus and delay rental payments. This is a case of first impression.

■ Louisiana law recognizes the right to retain bonuses and delay payments as a property right, being part of an executive right under the mineral code and, as such, an incorporeal immovable which may be transferred under Louisiana law separate from the other executive mineral rights as long as all the formalities for transfer of an incorporeal immovable are met. La.R.S. 31:16, 31:18, 31:105, 31:106; *Andrus v. Ka-hao*, 414 So 2d 1199 (La.1982). In this case, all of the proper formalities for valid transfer of incorporeal immovables were met when Thibodaux transferred the right to retain bonuses and delay rentals to its stockholders. The defendant does not contest the validity of the transfers.

■ Defendant does rightfully contend, however, that the validity of the transfer under state law is not material to the question of which party should pay taxes on the income derived from the lease bonuses and delay rentals. In an early case, the Court found the distinction under Louisiana state law between assignments and subleases was immaterial for federal income tax purposes:

> The formal attributes of those instruments or the descriptive terminology which may be applied to them in the local law are both irrelevant. *Palmer v. Bender*, 287 U.S. 551, 555, 53 S.Ct. 225 [226], 77 L.Ed. 489 (1932).

■ Federal law controls federal tax matters unless there is express mention in the IRS Code that state law should apply.

> The exertion of [Congress' plenary power under the Constitution to tax income] is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation.... State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law ... State law creates legal interests but the federal statute determines when and how they shall be taxed. [Citations omitted.] *Burnet v. Harmel*, 287 U.S. 103, 110, 53 S.Ct. 74 [77], 77 L.Ed. 199 (1932).

Therefore "[l]egal title to the property concerned is not the decisive factor in determining whether the government may tax the income accruing to that property. *Anderson v. Helvering*, [310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277 (1940).] Taxation should be based on the economic realities of the particular commercial transaction."

*Carr Staley Inc. v. United States,* 496 F.2d 1366, 1375 (5th Cir.1974), *cert. denied,* 420 U.S. 963, 95 S.Ct. 1355, 43 L.Ed.2d 441 (1975).

■ Accordingly, the Court must look to the federal law of taxation itself to determine whether plaintiff Thibodaux is taxable on the income derived from lease bonuses and delay rentals.

■ Under 26 U.S.C. § 61(a), gross income is defined as "all income from whatever source derived, including (but not limited to) the following items: ... (3) Gains derived from dealings in property; ... (5) Rents; (6) Royalties; (7) Dividends...." Treasury Regulation 26 CFR § 1.612–3(c)(1) defines "delay rental" in pertinent part:

(1) A delay rental is an amount paid for the privilege of deferring development of the property and which could have been avoided by abandonment of the lease, or by commencement of development operations, or by obtaining production.

(2) Since a delay rental is in the nature of rent it is ordinary income to the payee and not subject to depletion.

Because the IRS Code equates delay rentals to rents, they are therefore taxable to the corporation who still retains and controls the right to lease the property.

Bonus rights are nowhere defined in the federal taxation statutes and regulations. Like delay rentals, lease bonuses do not depend on production of the minerals.[1] This fact, coupled with the concept of "economic interest" discussed below, leads the court to conclude that the transfer of the right to receive the lease bonus and delay rental payments, although a transfer of property under Louisiana law, was nonetheless simply an anticipatory assignment of income by the plaintiff to its shareholders under federal income tax law.

26 CFR § 1.636–3(a)(1)(1973) states in pertinent part:

A right to mineral in place which can be required to be satisfied by other than the production of mineral from the burdened mineral property is not an economic interest in mineral in place. *Carr Staley Inc.* 496 F.2d at 1370, n. 4.

Recently, in a case involving the taxation of a different kind of mineral interest, the Fifth Circuit nonetheless noted that:

[t]he concept of "economic interest" originated as a test to determine what kinds of income derived from mineral production and sale were subject to depletion. It now also determines who is taxable on that income. *Holbrook v. C.I.R.,* 450 F.2d 134, 136 (5th Cir.1971).

*See also Christie v. United States,* 436 F.2d 1216 (5th Cir.1971) [Taxpayers retained an economic interest in oil capable of being allocated to production and were taxable on income accruing because the assignees had the option to have the proceeds from sale of well production equipment applied to reduce the oil payment.] In the *Christie* decision, the Fifth Circuit said that there were two interrelated concepts as to who is the owner of a depletable and taxable economic interest in oil in place:

The taxpayer must have "(1) 'acquired, by investment, any interest in the oil in place,' and (2) secured by legal relationship 'income derived from the extraction of the oil, to which he must look for a return of his capital.'" ... The second concept has been interpreted by the Supreme Court to mean "that the taxpayer must look *solely* to the extraction of oil or gas for a return of his capital." [Citations omitted] [Emphasis in original] *Id.* at 1218.

■ On that basis then, the bonus and delay rentals are not economic interests for purposes of federal taxation because economic interest secures income derived from the extraction of oil; lease bonuses and delay rental rights are rights to payment

---

1. La.R.S. 31:213 reads in pertinent part:

(1) "Bonus" means money or other property given for the execution of a mineral lease, except interests in production from or attributable to property on which the lease is given.

(4) "Rental" means money or other property given to maintain a mineral lease in the absence of drilling or mining operations or production of minerals. "Rental" does not include payments classified by a lease as constructive production.

unrelated to production or to the extraction of oil.

Furthermore, Treasury Regulation 26 CFR § 1.611–1(b) *Economic interest* as relates to depletion reads in pertinent part:

(b) *Economic interest.* (1) ... An economic interest is possessed in every case in which the taxpayer has acquired by investment any interest in mineral in place ... and secured, by any form of legal relationship, income derived from the extraction of the mineral ... to which he must look for a return of his capital.... *A person who has no capital investment in the mineral deposit ... does not possess an economic interest merely because through a contractual relation he possesses a mere economic or pecuniary advantage derived from production.* For example, an agreement between the owner of an economic interest and another entitling the latter to ... compensation for extraction ... does not convey a depletable economic interest. Further *depletion deductions with respect to an economic interest of a corporation are allowed to the corporation and not to its shareholders.* (Emphasis added.)

■ Plaintiff seeks to distinguish the federal tax cases involving shifting income by arguing that while a transfer of income only may be an assignment of income, transfer of income producing property is not. However, that a transfer of property occurred under state law does not change the characterization of the payments for tax purposes. The assignee/stockholders have no more of an interest in the minerals in place than they did before the transfer of the right to receive bonus and delay rental payments.

■ While there are no cases directly on point, the facts and issues of this case are analogous to those in *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). In *Sunnen,* the taxpayer was an inventor-patentee, president and majority shareholder of a corporation which manufactured and sold patented grinding machines and other tools. The corporation paid royalties to the taxpayer for licenses to manufacture and sell several devices. At various times, the taxpayer assigned to his wife, who held two hundred shares of corporate stock, all his right, title and interest in the various license contracts. The assignments gave the taxpayer's wife exclusive title and power over the royalties accruing under the contracts and she paid taxes on the royalty payments. The issue presented in *Sunnen* was whether the tax consequences should have been any different because the taxpayer assigned the underlying contracts to his wife, rather than just giving her the right to receive the royalty payments. This is similar to the issue presented by the plaintiff Thibodaux which argues that the transfer of the right to bonus and delay rentals was not a mere assignment of income but was a transfer of property. The United States Supreme Court in *Sunnen* upheld the Tax Court's decision that his wife's royalty payments were nonetheless taxable to the taxpayer.

In so doing, the Court recognized that [h]ad the taxpayer retained the various license contracts and assigned to his wife the right to receive the royalty payments accruing thereunder, such payments would clearly have been taxable income to him.... [T]he mere assignment of the right to receive income is not enough to insulate the assignor from income tax liability. *Id.* at 603–604 [68 S.Ct. at 722].

Like the *Sunnen* Court, this Court is not persuaded that the plaintiff has relinquished sufficient control to be relieved from tax liability. Plaintiff Thibodaux alone can lease or not lease the land. The leases which it makes can provide, or not provide for delay rentals or lease bonuses; the amount of income from the delay rentals and leases is solely within the plaintiff's discretion. The economic interest in the oil in place then is solely vested in the plaintiff Thibodaux and the mere fact that someone other than Thibodaux may have, as a matter of state law, legal title to the right to receive lease bonuses and delay rentals is not determinative of the taxation issue.

The taxpayer has equally enjoyed the fruits of his labor or investment and

obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as a means of procuring them. *Commissioner v. P.G. Lake, Inc.*, 356 U.S. 260, 267, 78 S.Ct. 691, 695, 2 L.Ed.2d 743 (1958), quoting *Helvering v. Horst*, 311 U.S. 112, 117, 61 S.Ct. 144, 147, 85 L.Ed. 75 (1940) [gift of interest coupons from negotiable bonds by father to son was taxable to father].

As in this case, the *Sunnen* taxpayer argued that "the license contracts rather than the patents and the patent applications were the ultimate source of the royalty payments and constituted income-producing property, the assignment of which freed the taxpayer from further income tax liability." 333 U.S. at 604, 68 S.Ct. at 722. The *Sunnen* court stated:

It is not enough to trace income to the property which is its true source, a matter which may become more metaphysical than legal. Nor is the tax problem with which we are concerned necessarily answered by the fact that such property, if it can be properly identified, has been assigned. The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes.

\* \* \* \* \* \*

"Taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid." *Id.* at 604–605, 68 S.Ct. at 722–723, quoting *Corliss v. Bowers*, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930).

The *Sunnen* Court decided the taxpayer's assignment to his wife of his right, title and interest and royalties in license contracts, while he still retained an interest in the contracts and the power to control the payment of royalties, was a transfer of the right to receive income rather than a disposition of all the taxpayer's interest in the contracts and the royalties.

The taxpayer's purported assignment to his wife of the various license contracts may properly be said to have left him with something more than a memory. He retained very substantial interests in the contracts themselves, as well as power to control the payment of royalties to his wife, thereby satisfying the various criteria of taxability set forth in the [*Helvering v.*] *Clifford* [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788 (1940) ]—*Horst* group of cases. *Id.* 333 U.S. at 608, 68 S.Ct. at 724.

A similar situation exists in this case: (1) As owner of the minerals in place, the corporate plaintiff Thibodaux remains in a position to exercise extensive control whether lease bonuses and delay rentals are paid despite having transfered the right to receive those payments to the stockholders. (2) Thibodaux's controlling position in executing the mineral leases also permits it to regulate the amount of lease bonuses and delay rentals payable to the stockholders. (3) Thibodaux remains the owner of the minerals in place. (4) There is no indication that the transfer of the right to receive bonus and delay rental payments effected any substantial change in the plaintiff's economic status. The transactions were simply a reallocation of income within the corporate family group, a reallocation which, as in *Sunnen*, does not shift the incidence of income tax liability. *See also Helvering v. Horst, supra* ["Common understanding and experience are the touchstones for the interpretation of the revenue laws. The power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment, and hence the realization, of the income by him who exercises it."] *Cf. Holbrook v. C.I.R.*, 450 F.2d 134, 141–142 (5th Cir.1971) ["The mere transfer of bare legal title to property is not enough to constitute a 'sale' for income tax purposes if the transferor continues to exercise virtually all his former control, and stands in the same economic position as he did prior to the transfer."]

In this case, the plaintiff retains control of the leases, from which the bonus and delay rentals derive. The income thus is taxable to the plaintiff although paid to the stockholders. "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." *Helvering v. Horst*, 311 U.S. at 119, 61 S.Ct. at 148. The plaintiff creates the right to receive the bonus and delay rentals through its control of the lease.

Using the metaphor of a tree, the plaintiff argues that the stockholders received from the corporation not just the fruits, but a whole branch as well. However, a branch without the life-blood of the tree cannot survive its severance. This metaphorical branch [the right to receive lease bonus and delay rental payments] has no roots of its own from which to continue to bear fruit apart from the tree. Thibodaux still retains an economic interest in the oil and gas in place. Thibodaux still owns the land from which the minerals were extracted. Thibodaux still has the exclusive right to negotiate and enter into future leases affecting the property. Consequently, Thibodaux still has a taxable economic interest in the leases under federal tax law, irrespective of Louisiana mineral property law.

The cases on which the plaintiff relies are equally as distinguishable as its metaphor.

Plaintiff relies on a portion of *Burnet v. Harmel* appearing at 287 U.S. 109–110, 53 S.Ct. 76–77 and *Group No. 1 Oil Corporation v. Bass*, 283 U.S. 279, 283, 51 S.Ct. 432, 433, 75 L.Ed. 1032 (1931) to show that a "determination of whether title has passed is a question of state law." However, the defendant is not questioning the validity of title's passing under state law. The defendant simply maintains that the validity of title's passing under state law is irrelevant to whether or not plaintiff owes federal income tax on the lease bonus and delay rental payments. Additionally, the

*Burnet* court at 287 U.S. 109–110, 53 S.Ct. 76–77, itself distinguished the earlier *Group No. 1 Oil Corp.* decision. The *Group No. 1* question was not one of interpreting a federal statute, but was one of deciding the power of the federal government to levy a tax on the income of a lessee of state land. Because the state court had decided that title had passed from the state to private owners, the *Group No. 1* court found the private owners were not immune from federal income tax. Likewise in *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 399, 52 S.Ct. 443, 444, 76 L.Ed. 815 (1932), the taxpayer relied on *Group No. 1* to argue that it should be exempt from federal taxation because it was leasing instrumentalities of the state. The Court found in that case that indeed the lease was an instrumentality of the state, and allowed the exemption.[2] Those competing interests are not at issue in this case.

Another case on which plaintiff relies is also distinguishable. *Blair v. Commissioner*, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937) questioned the liability of a beneficiary of a testamentary trust for a tax upon the income which he had assigned to his children prior to the tax years and which the trustees had paid to them. The Court decided that

> [t]he question of the validity of the assignments is a question of local law.... The decision of the state court upon these questions is final ... To derogate from the authority of that conclusion and of the decree it commanded, so far as the question is one of state law, would be wholly unwarranted in the exercise of federal jurisdiction.

> In the face of this ruling of the state court it is not open to the Government to argue that the trust "was, under the Illinois law, a spendthrift trust."

> The question remains whether, treating the assignments as valid, the assignor was still taxable upon the income under the federal income tax act. That is a

---

**2.** The United States Supreme Court later disapproved and overruled that portion of *Burnet v. Coronado* which had allowed the exemption. *Helvering v. Bankline Oil Co.*, 303 U.S. 362, 369–

370, 58 S.Ct. 616, 619, 82 L.Ed. 897 (1938); *Helvering v. Mountain Producers Corp.*, 303 U.S. 376, 383–387, 58 S.Ct. 623, 626–628, 82 L.Ed. 907 (1938).

**374**

federal question. *Id.* at 9, 57 S.Ct. at 332.

In *Blair*, the issue more concerned the binding effect of a state court judgment rather than whether state law should take precedence over federal tax law. The argument in *Blair* was that because it was a spendthrift trust, the beneficiary could not sell his interest. There is no argument made in this case that Thibodaux could not make a transfer under state law; in fact, both sides agree that it could and that it did. The dispute is over the character of the interest transferred for federal income tax purposes, i.e. did Thibodaux, pursuant to the transfer, divest itself of enough of an economic interest under federal tax law to avoid paying federal income tax on the lease bonus and delay rental payments? Because Thibodaux still retained the right to lease and to control the amount of bonus and delay rental payments, the Court finds that Thibodaux retained enough of an economic interest to be taxed under the IRS Code.

Furthermore, plaintiffs cite *United States v. Maniscalco*, 523 F.Supp. 1338 (E.D.La.1981), for the following propositions: it is "settled that the nature and extent of a taxpayer's interest in property is determined by state law;" and any property right held by the taxpayer in the property was "determined by the laws of the State of Louisiana, whose civil tradition is unique among the [fifty] 50 states." The *Maniscalco* facts, like those of *Blair*, are clearly distinguishable from this case. *Maniscalco* involved a federal gambling tax lien on real property. The gambler agreed to take over the mortgage payments on a widow's house for a time and then quit paying, at which point the widow Stumpf finished paying for the house. The federal government wanted to put a tax lien on the widow's house for the gambler's debt. The Court had to decide if the widow could dissolve the "sale" of the house to the gambler, to avoid the gambling tax lien. The court found that the seller's right to dissolve a sale was a substantive and separate right, independent of the discussion of ranking liens. Therefore Mrs. Stumpf could dissolve the sale to the defen-

dant. The defendant's tax lien did not attach to the property but only attached to the money the gambler had paid on the mortgage, which money the widow had to refund the gambler. There was no competing federal law in *Maniscalco;* there was no federal law that said that Mrs. Stumpf could not dissolve the sale. Therefore the legal question in *Maniscalco* is also distinguishable from this case.

There was likewise no competing/conflicting federal law involved in *United States v. Chapman*, 756 F.2d 1237 (5th Cir.1985), another case cited by the plaintiff. In *Chapman*, the government was allowed by the courts to enforce a tax lien against property which the taxpayer had allegedly transferred to his daughter. In so doing, the Court commented that the "state law of Texas defines whether the taxpayer has a property right in the Texas sited realty." *Id.* at 1240. The issue was whether the transfer [made to defraud creditors, including the government] was invalid even though the government had not obtained a judgment against the taxpayer for unpaid wagering excise taxes at the time the property was transferred.

■ Plaintiff also cites Revenue Ruling 71–130, 1971–1 C.B. 28. In that Revenue Ruling, taxpayers owned several tracts of land leased for oil and gas development in which the taxpayers reserved a mineral royalty interest. By act of donation, the taxpayers transferred an undivided one-half mineral royalty interest in all oil, gas and other minerals produced from the property. The taxpayers retained all leasing rights over the property. The IRS decided that the "transfer of the *royalty interest* ... is an assignment of a property interest and not an anticipatory assignment of income." (Emphasis supplied.) This made the income from the fractional royalty share taxable to the transferee and not to the transferor. The facts of this case, however, do not come under Revenue Ruling 71–130, 1971–1 C.B. 28. A royalty interest is not at issue here. There are significant differences between a royalty interest and delay rentals and bonus rights. Specifically under Treasury Regulation 26

CFR § 1.612–3(c)(1) *infra*, a delay rental is "rent" and the right to receive a rental payment is not a property right, but only the right to receive future income. Likewise and in contrast to royalties, when the bonus payment is severed from the royalty interest, it is not a credit against the royalty to be received from production. Bonus payments then are in no way dependent on the production of oil, gas and other minerals.

 The plaintiff argues that because the bonus rights are now held by the same stockholders who also hold the royalty interest, the two have somehow become merged and therefore the bonus rights should now be treated as royalties. The Court does not agree. The fact that the plaintiff's shareholders are now the holders of the royalty interest as well as the recipients of lease bonus and delay rental payments is merely coincidental: the royalty interest was assigned to the shareholders in 1976; the right to receive the delay rentals and lease bonuses was assigned in 1981. Revenue Ruling 71–130, 1971–1 C.B. 28 only concerns the transfer of a royalty interest, which interest depends on the production of oil, gas and other minerals and, accordingly, is clearly distinguishable from this case.

Finally while admitting that there is a difference between the royalty interest and the bonus rights and delay rentals at issue in this case, plaintiff contends that there should be no difference in the tax consequences because when Thibodaux transferred its royalty interest, it retained the right to grant leases, just as it retained the right to grant leases when it transferred the bonus rights and delay rentals. Plaintiff states that "[i]n both cases, the landowner can affect the flow of income to the transferees by negotiating leases." Plaintiff argues that since the IRS said in Revenue Ruling 71–130, 1971 C.B. 28 that the retention of the right to grant leases does not cause the transferor (of the right to receive royalties) to remain taxable on the royalty income, that same result should occur from a transfer of the bonus rights and delay rentals with retention of the right to grant leases.

This argument ignores the basic difference between royalties on the one hand and lease bonuses and delay rentals on the other. A royalty is an economic interest for purposes of federal taxation because it is income derived from the extraction of oil and is subject to depletion. Lease bonuses and delay rental rights are rights to payment unrelated to production or to the extraction of oil; they do not qualify for depletions; they are not an economic interest in property for purposes of federal income tax law. Therefore the plaintiff has not transferred an economic interest in property to the shareholder, and under federal tax law the transaction was an anticipatory assignment of income, which is taxable to plaintiff Thibodaux.

