**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Bobby Joe CHAPMAN, a/k/a B.J. Chapman, et al., Defendants-Appellants.**

No. 84–1221.

United States Court of Appeals, Fifth Circuit.

April 12, 1985.

---

Wm. M. Ravkind, Dallas, Tex., for defendants-appellants.

Michael L. Paup, Chief, Appellate Section, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., William S. Estabrook, Joan I. Oppenheimer, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG, and TATE, Circuit Judges.

TATE, Circuit Judge:

The principal issue before us concerns whether the United States may enforce a tax lien against property titled to the taxpayer's daughter, on the ground that the transfer into her name with intent to defraud the United States was void as against that creditor. We affirm, as not clearly erroneous, Fed.R.Civ.P. 52(a), the district court's factual determination that the transfer was made with such intent. We likewise affirm the district court's rejection of the taxpayer's alternative contention that—if the transfer was indeed void as against the creditor—the taxpayer's wife's homestead interest in the property should be recognized in any distribution of the proceeds of an execution sale against the property; again we do not find, on the evidence in the record before us, reversible error in the district court's factual determination that neither the taxpayer nor his wife had the requisite intent to claim that property (in which they lived, as alleged renters from their daughter) as their homestead.

*Procedural Context*

The United States obtained judgment in the amount of $485,185 against the taxpayer Chapman, a Texas resident, for unpaid wagering excise taxes, Section 4401 of the Internal Revenue Code of 1954, 26 U.S.C. § 4401. These taxes had accrued and were due in 1971 and 1972, and were admittedly owed by him as (then) a large-scale bookmaker.

By the present proceedings, the United States successfully sought recognition of a tax lien upon a valuable Texas residential property (the "Shannon Court" property), title to which was in the name of the taxpayer's daughter (Kitty Joy). The government successfully contended that the property had been placed in the daughter's name with intent to defraud the United States from collecting unpaid taxes and that, under Texas law, the transfer into the daughter's name was void as against the creditor intended to be defrauded thereby.

The taxpayer, his wife, and his daughter appeal the district court judgment permitting execution of the judgment which was against the taxpayer (only), against the Shannon Court property (titled to the

daughter), and further decreeing that the taxpayer's wife had no homestead right (as alternatively contended by the defendants) recognizable as a claim against the proceeds.

### I.

■ Before adverting to the factual setting, we briefly outline the legal context in which the issue of fraudulent transfer arises. The state law of Texas defines whether the taxpayer has a property right in the Texas-sited realty; if he does, it is subject to the government tax lien. *Aguilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960). In this instance, whether the taxpayer retained a property interest subject to the federal lien is governed by the application of the Texas Fraudulent Transfers Act, Tex.Bus. & Com.Code Ann. §§ 24.02, 24.03 (Vernon 1968). Section 24.02(a) provides, generally, that a transfer of property is void as to a creditor if the transfer was intended to delay, hinder, or defraud any creditor from obtaining "that to which he is, *or may become,* entitled." [1] Section 24.-03 provides that a transfer is void with respect "to an existing creditor" if "not made for a fair consideration." [2]

■ As this court has construed these Texas statutory provisions,

> a transfer in fraud of creditors is voidable in the general sense that good title may be passed to a transferee who does

not have notice of the fraud, Tex.Bus. & Com.Code Ann. § 24.02(b), and void in the very limited sense that creditors may otherwise treat the transferred property as though the transfer had never taken place, *see Texas Sand Co. v. Shield*, 381 S.W.2d 48, 55 (Tex.1964).

*In re MortgageAmerica Corporation*, 714 F.2d 1266, 1272–73 (5th Cir.1983). Under these Texas statutes, "a conveyance which is found to be fraudulent as to creditors is wholly null and void as to such creditors", and "the legal as well as the equitable title remains in the debtor for the purpose of satisfying debts." *Texas Sand Company v. Shield*, 381 S.W.2d 48, 54 (Tex.1964). Thus, a judgment creditor with a lien on the debtor's property may enforce that lien directly against realty that had been placed in the name of another with intent to defraud the creditor. *Id.*, 381 S.W.2d at 54–55.

■ The particular issue before us concerns whether a transfer intended to defraud creditors is void, under the Texas Fraudulent Transfers Act, as to a creditor whose debt arises after the transfer has been made. As a general rule, the statutory provisions afford no remedy to a person who was not a creditor of the transferor at the time of the transaction. *See Texas Jurisprudence*, "Creditors Rights and Remedies", § 576 (1982), and decisions therein cited. However, *Id.*, § 577, a different rule applies when the transfer is made with fraudulent intent *at the time of*

---

**1.** Tex.Bus. & Com.Code Ann. § 24.02 (Vernon 1968) provides:

(a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

(1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become entitled; or

(2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

(b) The title of a purchaser for value is not void under Subsection

(a) of this section unless he purchased with notice of

(1) the intent of his transferor to delay, hinder, or defraud; or

(2) the fraud that voided the title of his transferor.

**2.** Tex.Bus. & Com.Code Ann. § 24.03 (Vernon 1968) provides:

(a) A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

(b) Subsection (a) of this section does not void a transfer with respect to a subsequent creditor of or purchaser from the debtor.

*transfer* to evade future liabilities to a subsequent creditor. As the decisions cited in § 577 and to be cited below show, in such instance the transfer is void as to the subsequent creditor.

 Thus, the conveyance of his property by a tort-defendant, made with intent to defraud the tort-plaintiff, is subject to invalidation as a fraudulent conveyance, even though the liability to the prospective tort-creditor has not matured into a judgment at the time of the transfer. *See, e.g., Hollins v. Rapid Transit Lines, Inc.,* 440 S.W.2d 57 (Tex.1969). A transfer "made with a fraudulent intent to evade future liabilities ... is void as to subsequent creditors." *Hartman v. Hartman,* 135 Tex. 596, 138 S.W.2d 802, 803 (1940). "[A] note made with no intention of payment for the purpose of defrauding creditors would be void as against existing or future creditors." *Stevens v. Cobern,* 213 S.W. 925, 925 (Tex.1919). In order for a conveyance to be held fraudulent as to one who became a creditor subsequent to the transaction, "it is necessary that the intent exist at the time [of the conveyance] to shield the property from debts thereafter to be incurred." *Cates v. Clark,* 24 S.W.2d 450, 453 (Tex. Civ.App.1930).

Further, as does not seem to be contested,

[a] creditor may follow property fraudulently conveyed by the debtor and subject the proceeds to the payment of the creditor's debt. The conversion of the property by the grantee into other property does not prevent the creditors from following the property in its converted form if they are able to do so.

*Texas Jurisprudence, supra,* § 556 at p. 570.

## II.

In the present instance, based upon application of these fraudulent-transfer principles, the district court held that the government's tax lien extended to the taxpayer Chapman's property rights in a residence in which he and his wife lived, but to which the title was held by his daughter, Kitty Joy. Briefly summarized, the factual context of this holding is as follows:

The taxpayer Chapman was a gambler engaged in large-scale bookmaking from 1962 to at least the early part of 1972. As such he was liable for an excise tax in the amount of 10% of each bet he took. He admitted he did not pay such tax as required, claiming not to know of it or—at one point—to have believed it was unconstitutional. He conceded that he was habitually late in paying his income taxes due to the United States, that he always had problems with the Internal Revenue Service, and that, because of these problems, he liked to keep his assets in cash "to avoid the reach of the IRS." R. II, p. 130.

 In 1961 Chapman and his wife purchased a home on Cordova Street in Dallas, Texas, secured by a mortgage. In late 1968 he conveyed that home (valued at a minimum of $31,000) to his minor son ("Bobby E."), age 19, for no consideration except Bobby E.'s assumption of the mortgage (of balance due less than $9,000).[3]

---

**3.** Where the only consideration for a transfer of property has been assumption of a mortgage, the transfer may be fraudulent as to a creditor within the protection of the Texas Fraudulent Transfers Act, if the value of the property transferred is substantially greater than the mortgage-debt assumed by the transferee. *Texas Sand Company v. Shield,* 381 S.W.2d 48, 53 (Tex.1964) (transfer by grantor to his son of 2,031-acre ranch, with consideration being assumption of $92,000 mortgage, not based on substantial consideration; an indicia of fraud); *Evans v. First National Bank of Mt. Vernon,* 65 S.W.2d 366 (Tex.1933) (assumption of an incumbrance of $1,500 on property worth $3,000 was not valuable consideration); *United States v. Wilson,* 500 F.Supp. 831, 832 (N.D.Tex., 1980) (transfer void as to creditor where value of property transferred was $45,000, and in consideration grantee children assumed mortgage of $5,000 and paid ad valorem of taxes of some $5,900).

Here, aside from the indicia of fraudulent transfer on the fact of the transfer from parents to son arising from lack of fair consideration, the grantor parents continued to reside on the property and continued to pay the mortgage debt thereupon, from liability therefor they had not been released upon the son's assumption of the mortgage.

Chapman and his wife continued to live in the home and continued to make the mortgage payments, allegedly in lieu of rent to his son. At approximately the same time as this transaction, Chapman transferred his only other non-cash asset, a used car lot, to his two minor sons, Bobby E. and his twin brother. (A few days after the taxpayer's transfer of his Cordova Street home to his son, a raid and search was conducted of these premises, directed at the taxpayer's gambling operations thereupon.)

In 1973, the son Bobby E. conveyed the Cordova Street house to his sister, Kitty Joy, then age 18, for the alleged amount of some $3,535, which Kitty Joy borrowed and secured by mortgage on the home. Again, Chapman and his wife continued to live in the home, and there is evidence from which the trial court could find that Chapman continued to make the mortgage payments.

In 1975, Kitty Joy, who had no appreciable income at the time, exchanged the Cordova Street house and $35,000 cash for the Shannon Court house, executing a mortgage note for the $35,000 cash. She and her parents moved into the Shannon Court house where she lived until her marriage in 1978, after which her parents continued to live there. Again, Chapman made the mortgage payments totaling over $5,000 per year, allegedly in lieu of rent to Kitty Joy. He made substantial improvements and repairs to the house. Utility services have been provided to that residence always in the name of Chapman himself since the acquisition of the property.

Chapman, his wife, and his children Bobby E. and Kitty Joy, testified that the purpose of the transfer of Chapman's property to the name of his children was simply to assure that the children would have the property and to protect the family against losing it because of possible gambling losses that might result from Chapman's activities as an admittedly heavy gambler. Chapman's attorney argues most persuasively that, at most, the evidence shows only that Chapman, engaged in a risky business, endeavored to protect his family—should he suffer gambling losses in the future—by placing his property in the name of his children. Thus, any transfer was not made with intent to defraud the United States of present or future wagering excise tax liability, about the possibility of which, moreover, Chapman claimed total ignorance.

If the district court, which tried this case without a jury, had accepted as credible this testimony of the Chapman witnesses, then arguably the intra-familial transfers of property would not have been void as to the United States. The Texas Fraudulent Transfers Act, as previously noted, does not entitle a subsequent creditor to reach the grantor's interest in property conveyed for inadequate consideration to family members (or others)—unless (construing the cases most favorably to the taxpayer appellant) the transfer was made with intent to defraud that particular creditor (*i.e.*, the United States; not the gambling winners) as to a contemplated future liability of the debtor-transferor to that creditor.

However, the district court did not accept as credible the testimony upon which Chapman relies. Instead, it found that the initial transfer of the Cordova Street house in 1968 was made by Chapman and his wife to his minor son Bobby E. with the intent to defraud the United States and to hinder and delay it from collecting taxes then due and to become due. It also found that Bobby E. and Kitty Joy acquired the Cordova Street house, and Kitty Joy the Shannon Court house, with knowledge of Chapman's intent to delay and to defraud the United States of America.

Consequently, under the Texas fraudulent-conveyance principles previously summarized, the transfers of the Cordova Street property were void as to Chapman's liability to the United States for present and future wagering taxes. The taxpayer Chapman's interest therein (retained by him, insofar as the United States) was, therefore, subject to seizure and sale under the government's judgment for its excise tax lien, as was the Shannon Court property into which Chapman's interest was con-

verted by the exchange of the Cordova Street property for it.

■ The district court thus rejected the (not totally disinterested) testimony of the Chapman family members as to the lack of intent of the transfers to defraud the United States of his future wagering tax liability. Instead, from the admissions of Chapman himself as to his Internal Revenue Service troubles and desire to keep his assets beyond the Service's reach (albeit, denying intent to delay or defraud the United States of *wagering* tax liability, based upon his not-necessarily-believable account that he did not know of it), and from other indicia of fraud,[4] the district court found from the evidence and objective conduct as a whole that the purpose of the transfers was to hinder or defraud the United States in its collection of Chapman's excise and other federal tax liabilities.

The judge so determined, sitting as a trier of fact without a jury. "Fraud determinations are findings of fact that will not be set aside upon appeal unless clearly erroneous." *United States v. Fernon*, 640 F.2d 609, 613 (5th Cir.1981) (citations omitted).

We are unable to hold that the district court so erred.

### III.

■ The taxpayer Chapman and his wife advance an alternative contention, as they did in the trial court. The tax judgment is against the husband alone. If the court does find that the transfers of the Chapman residential property were void as to the United States, they argue that, then—since Chapman and his wife still had title to the original Cordova Street residence in which they then lived, and still have title to the Shannon Court property into which it was converted—Chapman's wife was not liable for the taxes in question and is therefore entitled to recognition of her homestead interest in the property.

If so, she would be entitled to receive from the proceeds of the execution sale so much of them as represent compensation for the non-liable wife's loss of her separate homestead interest. *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 2145–46, 76 L.Ed.2d 236 (1983).

In rejecting this claim, the district court found that the testimony of the taxpayer Chapman and his wife established that neither one of them had the intent to claim the Shannon Court property as a homestead. Under oath, they both testified that they occupied the premises only as renters from their daughter. It is conceded that, if so, they had no homestead interest under Texas law. The taxpayer argues, in effect, that because the district court disbelieved their testimony of lack of fraudulent intent, it should likewise disbelieve their testimony of lack of homestead intent, based upon the objective facts of their continuous occupation of the property as a homestead and (alleged) lack of intent to permanently abandon it.

The argument may be superficially attractive, but—in the face of these parties' sworn testimony of lack of homestead intent—we are unable to find the district court's factual determination against homestead-intent to be clearly erroneous.

Further, although we rest our conclusion upon that factual holding, we have some doubt that Texas law would support a claim of homestead right in a grantor who fraudulently conveyed the property to another, since the latter holds title—save as to the defrauded creditor—to the property. As stated in a somewhat different context, "a conveyance, though fraudulent, is valid as between the parties to the conveyance." *Texas Sand Company v. Shield, supra,* 381 S.W.2d at 55. In rejecting a contention similar to the present, the Texas supreme court held that the grantor "had no title or interest in the 335 acres of land, to which a homestead exemption could attach, subse-

---

**4.** For example: inadequate consideration; intrafamilial transfers (to non-incomed minors, at that); the transfers to his children of all the taxpayer's seizable property, both home and used-car lot; the retention of possession and all indicia of ownership of both the original Cordova Street property and the Shannon Court property into which converted.

quent to his [fraudulent] conveyance to [his] mother." *Stevens v. Cobern*, 213 S.W. 925, 926 (Tex.1919) (reversing intermediate court, which had recognized the homestead right).

The taxpayer and spouse rely with some confidence upon *United States v. Wilson*, 500 F.Supp. 831 (N.D.Tex.1980). There, although a transfer by the taxpayer debtors to their children was void against the United States as a fraudulent conveyance, the taxpayers' homestead interest was recognized, based upon their possession of the property as a home before and after the conveyance. Unlike the present case, however, the decision (assuming it was correctly decided under Texas law) does not indicate that the debtors-grantors, who had reserved a life estate and the right to possession, disclaimed under oath any intent to occupy the premises as their homestead.[5]

No issue is raised as to the district court's holding that, absent a valid homestead interest by the wife, the community interest of the couple in the Shannon Court property was under Texas law, as community property, subject to execution sale for the indebtedness of the husband.

*Conclusion*

Accordingly, we AFFIRM the judgment of the district court.

AFFIRMED.

---

**5.** While we prefer to rest upon this ground our distinction of this case from the present, we note also that—unlike in *Wilson*—the present taxpayer and his wife never had legal title to the land, a predicate for their homestead interest. It was acquired from a third person in the name of their daughter—a conversion of fraudulently conveyed property that subjected the taxpayer's community *interest* (not title) to the government's claim as a defrauded creditor, but which nevertheless passed initial title to the daughter of the family only. *Cf., Stevens v. Cobern*, 213 S.W. 925, 926 (Tex.1919).