SCOTT E. RUBENSTEIN, TRANSFEREE, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 1254–06.          Filed June 7, 2010.

For many years P has lived with and cared for his father
in Florida. In 2003 P's father, who was insolvent and had
substantial unpaid income tax liabilities, transferred to P, for
little or no consideration, the condominium in which they both
resided. The IRS had previously determined, for purposes of
calculating his reasonable collection potential, that P's father

266

had zero net equity value in the condominium. After the transfer R determined that pursuant to sec. 6901, I.R.C., P has transferee liability equal to the condominium's fair market value as of the date of the transfer. R contends that the transfer was constructively fraudulent under Florida's Uniform Fraudulent Transfer Act (FUFTA), which applies to certain transfers of "assets", defined in Fla. Stat. Ann. sec. 726.106(2)(b) (West 2000) to exclude property that is "generally exempt under nonbankruptcy law". P asserts and R does not deny that under Florida law the condominium was his father's exempt homestead property. Consequently, P argues, because the condominium was "generally exempt under nonbankruptcy law", it is not an "asset" for purposes of the FUFTA and its transfer to P is not avoidable under the FUFTA. *Held*: As to the United States, homestead property is not "generally exempt under nonbankruptcy law" within the meaning of the FUFTA because it is reachable by the United States through judicial process to enforce collection of unpaid income tax liabilities; the condominium constitutes an "asset" for purposes of R's claim under the FUFTA. *Held*, *further*, the care that P provided for his father did not constitute "reasonably equivalent value" for the condominium within the meaning of the FUFTA, and the transfer was constructively fraudulent thereunder. *Held*, *further*, R is not equitably estopped from asserting transferee liability under sec. 6901, I.R.C., by virtue of having previously determined that the condominium had zero net equity value as to P's father for purposes of calculating his reasonable collection potential.

Scott E. Rubenstein, pro se.
*Timothy Sloane* and *Sergio Garcia-Pages*, for respondent.

THORNTON, *Judge*: Respondent determined that pursuant to section 6901 petitioner has transferee liability of $44,681, plus interest as provided by law, arising from his father's transfer to him of a Florida condominium.[1] Petitioner contends and respondent does not appear to dispute that the condominium qualified for homestead exemption under Florida law. The issues for decision are: (1) Whether the transfer was constructively fraudulent pursuant to section 726.106(1) or (2) of Florida's Uniform Fraudulent Transfer Act (FUFTA), codified at Fla. Stat. Ann. secs. 726.101 to 726.112 (West 2000); and (2) whether respondent is equi-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure. All figures have been rounded to the nearest dollar.

tably estopped from asserting transferee liability against petitioner.

## FINDINGS OF FACT

The parties have stipulated some facts, which we so find. When he petitioned the Court, petitioner resided in Florida.

### Petitioner's Care for His Father

In 1989, with his mother's health in decline, petitioner moved from his home in New Jersey to live with his parents in Florida. In 1993 his mother passed away. Since then, petitioner has continued to live with his father, Jerry Rubenstein, in Florida. While living with his father, petitioner has provided care for him. They have had no understanding or agreement that petitioner would be compensated for these services. Instead, petitioner has been motivated to care for his father by love, honor, respect, and devotion. Petitioner has never been a licensed caregiver or engaged in business as a caregiver for profit.

### The Condominium

In March 2002 Jerry Rubenstein purchased for $35,000 a condominium in Delray Beach, Florida (the condominium). He and petitioner have since resided there together. On February 21, 2003, Jerry Rubenstein transferred the condominium to petitioner by warranty deed for stated consideration of $10 and "other good and valuable consideration". That same day, petitioner recorded the warranty deed with the Clerk and the Comptroller of Palm Beach County, Florida. The fair market value of the condominium was then $41,000, and there were no liens or other encumbrances on the condominium (without consideration of any Federal tax lien). On July 22, 2004, petitioner mortgaged the condominium to secure a revolving credit agreement with a bank.

### Jerry Rubenstein's Financial Circumstances and Tax Liabilities

As of February 21, 2003—the day he transferred the condominium to petitioner—Jerry Rubenstein was insolvent and unable to pay his debts. Petitioner was aware of this fact. Jerry Rubenstein's debts included $112,420 that he owed the

United States for unpaid Federal income taxes, penalties, and interest for his taxable years 1994 through 2002.[2]

On May 13, 2002, Jerry Rubenstein had submitted to the Internal Revenue Service (IRS) an offer-in-compromise of $10,000 to settle his income tax liabilities for taxable years 1994 through 2001. By letter dated November 8, 2002, the IRS had rejected his offer-in-compromise on the ground that the amount offered was less than his reasonable collection potential (RCP) of $34,475. According to an asset/equity table attached to the rejection letter, in calculating Jerry Rubenstein's RCP the IRS had determined that his "Net Realizable Equity" in the condominium was zero.[3]

On September 29, 2004—some 18 months after Jerry Rubenstein had transferred the condominium to petitioner— the IRS filed, for the first time, a notice of Federal tax lien with respect to Jerry Rubenstein's unpaid assessments for income taxes, penalties, and interest for the years 1994 through 2002.

## Notice of Transferee Liability

By notice dated October 17, 2005, the IRS determined that petitioner had liability of $44,681, plus interest as provided by law, as Jerry Rubenstein's transferee of the condominium, with respect to Jerry Rubenstein's unpaid income tax, penalties, and interest for taxable years 1998 through 2002.

OPINION

## A. *Transferee Liability*

Respondent contends that pursuant to section 6901(a), petitioner, as the transferee of the condominium from his father, is liable for $41,000 plus "statutory interest" for

---

[2] In making this finding of fact, we have adhered to the parties' stipulation as to Jerry Rubenstein's accrued tax debts. It might be argued that Jerry Rubenstein's tax debt for 2002 accrued no earlier than Apr. 15, 2003, the due date of his 2002 income tax return. See *Roland v. United States*, 838 F.2d 1400, 1403 (5th Cir. 1988). Petitioner, however, has made no such argument. In any event, any such argument would not avail petitioner since Jerry Rubenstein's tax debts for years before 2002, as accrued on the date of the transfer, appear to exceed the condominium's value as of that date.

[3] The table lists "Real Estate" with a fair market value of $41,000 and "Quick Sale Value" of 80 percent of this amount, i.e., $32,800, offset by $32,800 of "Encumbrances or Exemptions", to arrive at net realizable equity in the real estate of zero. The parties appear to agree that the real estate referenced in this table is Jerry Rubenstein's condominium that he later transferred to petitioner.

unpaid tax liabilities, penalties, and interest owed by his father.[4]

### 1. *Section 6901*

Section 6901(a) provides that the liability of a transferee of a taxpayer's property may be "assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred". Section 6901(a) does not create or define a substantive liability but merely provides the Commissioner a procedure to assess and collect from the transferee of property the transferor's existing liability. See *Commissioner v. Stern*, 357 U.S. 39, 42 (1958) (discussing statutory predecessor of section 6901). For purposes of this case, the existence and extent of the transferee's liability are determined by the law of the State in which the transfer occurred; i.e., Florida.[5] See *id.* at 45; *Sawyer Trust v. Commissioner*, 133 T.C. 60, 73 (2009). Respondent bears the burden to prove that petitioner is liable as Jerry Rubenstein's transferee but not to show that Jerry Rubenstein is liable for tax. See sec. 6902(a); Rule 142(d).

### 2. *Florida Uniform Fraudulent Transfer Act*

Respondent argues that petitioner is liable as a transferee under Fla. Stat. Ann. sec. 726.106, which is identical to section 5 of the Uniform Fraudulent Transfer Act (UFTA). When certain conditions are met, these provisions treat a "transfer" by an insolvent debtor as constructively fraudulent; i.e., without regard to the actual intent of the parties.[6] The FUFTA,

---

[4] This assertion apparently reflects the parties' stipulation that the fair market value of the condominium on Feb. 21, 2003, was $41,000. Implicitly, then, notwithstanding that respondent's brief concludes by urging us to sustain his determination, respondent concedes that the notice of transferee liability was in error insofar as it asserted petitioner's transferee liability to exceed $41,000 plus "statutory interest". Respondent has not explained whether by "statutory interest" he means anything other than interest at the underpayment rate of sec. 6621, accumulating on the principal of $41,000 from the date of transferee liability. See *infra* note 18.

[5] In some situations Federal law determines the existence and extent of transferee liability. See, e.g., sec. 6324(a)(2), (b).

[6] Fla. Stat. Ann. sec. 726.106 (West 2000) provides:

*Transfers fraudulent as to present creditors*

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

like the UFTA, defines a "transfer" as a mode of disposing of or parting with an "asset". Fla. Stat. Ann. sec. 726.102(12); UFTA sec. 1(12), 7A (Part II) U.L.A. 15 (2006). If the term "asset" does not apply to property that has been conveyed, then there is no "transfer". *Ries v. Wintz Props., Inc.* (*In re Wintz Cos.*), 230 Bankr. 848, 860 (Bankr. 8th Cir. 1999) (construing identical language in Minnesota UFTA). A threshold question, then, is whether the condominium constituted an "asset" within the meaning of the FUFTA.

a. *Whether the Condominium Was an "Asset"*

The FUFTA, like the UFTA, defines "asset" broadly as "property of a debtor" but expressly excludes "Property to the extent it is generally exempt under nonbankruptcy law".[7] Fla. Stat. Ann. sec. 726.102(2)(b); UFTA sec. 1(2)(ii), 7A (Part II) U.L.A. 14. Petitioner contends, and respondent does not appear to dispute, that the condominium qualified as Jerry Rubenstein's homestead under Florida law.[8] Consequently,

_____

(2) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

[7] The FUFTA, like the UFTA, also expressly excludes from the definition of asset "Property to the extent it is encumbered by a valid lien". Fla. Stat. Ann. sec. 726.102(2)(a) (West 2000); UFTA sec. 1(2)(i), 7A (Part II) U.L.A. 14 (2006). "Valid lien" is defined to mean "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." Fla. Stat. Ann. sec. 726.102(13); UFTA sec. 1(13), 7A (Part II) U.L.A. 15. Although the IRS treated the condominium as having zero equity value, indicating that it was burdened with "encumbrances or exemptions" equal to its value, as discussed in greater detail *infra* this characterization apparently reflected a judgment not that the condominium was encumbered but that, as Jerry Rubenstein's principal residence and in the absence of approval by a Federal District Court, it was exempt from levy under sec. 6334(a)(13)(B). In any event, the parties have stipulated that there were no liens or other encumbrances on the condominium other than the Federal tax lien. A Federal tax lien arises upon all property rights belonging to a person liable to pay any tax who has failed to pay the liability after demand. See secs. 6321 and 6322. An unfiled Federal tax lien, however, is not valid against, among others, judgment lien creditors. See sec. 6323(a). The IRS did not file its notice of Federal tax lien against Jerry Rubenstein until Sept. 29, 2004, about 18 months after the condominium was conveyed to petitioner and shortly after petitioner had mortgaged it to a bank. Accordingly, any Federal tax lien that arose with respect to the condominium by virtue of Jerry Rubenstein's unpaid tax liabilities would not appear to be a "valid lien" within the meaning of the FUFTA. Consequently, the exclusion from the definition of "asset" of property encumbered by a valid lien is inapplicable to the condominium.

[8] Fla. Const. art. X, sec. 4, provides in pertinent part:

Homesteads; exemptions

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by

Continued

petitioner suggests, the condominium was "generally exempt under nonbankruptcy law" and so does not constitute an "asset" within the meaning of the FUFTA.

We have found no case expressly addressing this issue under the FUFTA or any other State's version of the UFTA. Petitioner's position might appear to be bolstered by cases holding, as a general proposition, that homesteads are "generally exempt under nonbankruptcy law" and are thus excluded from the definition of "asset" under the UFTA. See, e.g., *O'Neil v. Jones*, 403 Bankr. 228, 236 (Bankr. D. Conn. 2009) (holding that homestead property was not an "asset" under Connecticut UFTA to the extent of $75,000 homestead exemption provided under Connecticut law and stating that "a Debtor's transfer of an interest in property that is exempt under Connecticut law cannot be a fraudulent transfer" under Connecticut UFTA); *Fidelity Natl. Title Ins. Co. v. Shroeder*, 101 Cal. Rptr. 3d 854, 858 (Ct. App. 2009) (holding that the definition of "asset" under California UFTA excludes property subject to California's automatic homestead exemption); *McCone County Fed. Credit Union v. Gribble*, 216 P.3d 206, 210–211 (Mont. 2009) (holding that Montana UFTA could not be used to avoid a transfer of homestead property because a homestead is not an "asset" under UFTA, stating that "The existence of homestead exemption provisions in over 45 states quite simply means that homesteads are 'generally exempt' from execution or forced sales."); *Rich v. Rich*, 405 S.E.2d 858, 861 (W. Va. 1991) (holding that homestead property was not an "asset" under West Virginia UFTA to the extent of $5,000 homestead exemption provided under West Virginia law); see also *Dzikowski v. Delson*, 247 Bankr. 873, 875 (Bankr. S.D. Fla. 2000) (stating in dicta that a transfer of a homestead would not be avoidable under the FUFTA

---

a natural person:

   (1) a homestead * * * if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family;

   On supplemental brief respondent states: "The condominium may have qualified as a homestead under Florida law because, as of the transfer date, the transferor resided in the condominium that was located within a municipality, the City of Delray Beach." Respondent has raised no issue as to the applicability of the exception in the Florida homestead exemption law for "payment of taxes and assessments thereon". In any event, this exception, which the Court of Appeals for the Eleventh Circuit has described as applying to "unpaid property taxes on the homestead itself", *Havoco of Am., Ltd. v. Hill*, 197 F.3d 1135, 1142 n.10 (11th Cir. 1999), appears inapplicable to Jerry Rubenstein's unpaid income tax liability.

"because an interest in homestead is 'generally exempt under nonbankruptcy law'"). But see *Burrows v. Burrows*, 886 P.2d 984 (Okla. 1994) (holding that a father's conveyance of homestead property to avoid past-due support alimony and child support was fraudulent under Oklahoma's version of UFTA).

None of the just-cited cases, however, involved a situation in which the United States sought to avoid a transfer as fraudulent to collect unpaid tax liabilities. Some courts have allowed the United States to avoid transfers of homestead property under the relevant State's version of the UFTA but have not expressly addressed whether the homestead property should be considered to be "generally exempt under nonbankruptcy law" within the meaning of those laws. See *United States v. Bigalk*, 654 F. Supp. 2d 983, 991 n.7 (D. Minn. 2009) (involving Minnesota UFTA); *United States v. Stalker*, 86 AFTR 2d 2000–5515, 2000–2 USTC par. 50,632 (M.D. Fla. 2000) (involving FUFTA). Other courts, including this Court, have held a transfer of a residence to be fraudulent as to the United States under the relevant State's version of the UFTA without expressly discussing either the subject "generally exempt" language or qualification of the residence for homestead exemption. See *Suchar v. Commissioner*, T.C. Memo. 2005–23 (involving Maine UFTA); *Estate of Johnson v. Commissioner*, T.C. Memo. 2001–182 (involving FUFTA); *United States v. Tolbert*, 100 AFTR 2d 2007–5982, 2007–2 USTC par. 50,717 (W.D. Ark. 2007) (involving Arkansas UFTA), affd. 326 Fed. Appx. 412 (8th Cir. 2009); *Sequoia Prop. & Equip. Ltd. Pship. v. United States*, 90 AFTR 2d 2002–6728, 2002–2 USTC par. 50,773 (E.D. Cal. 2002) (involving California UFTA). Consequently, these cases provide little guidance in construing the FUFTA language in question or the UFTA language which it mirrors.

According to the official comments to the UFTA, its purpose is to "protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors."[9] UFTA sec. 3,

---

[9] Courts have looked to the official comments to the UFTA as an aid in construing the UFTA as enacted, in one version or another, by almost all the States. See, e.g., *Garrison City Broad., Inc. v. York Obstetrics & Gynecology, P.A.*, 985 A.2d 465, 468 n.5 (Me. 2009); *Glimcher Supermall Venture, LLC v. Coleman Co.*, 739 N.W.2d 815, 820–826 (S.D. 2007); *Thompson v. Hanson*, 219 P.3d 659, 664 (Wash. 2009). Consulting these comments and caselaw of other jurisdictions interpreting the UFTA appears especially appropriate in the light of Fla. Stat. Ann. sec. 726.112, which provides, substantially identically to UFTA sec. 11, 7A (Part II) U.L.A. 203, that the FUFTA "shall be applied and construed to effectuate its general purpose to make uniform

Continued

cmt. (2), 7A (Part II) U.L.A. 48. In excluding from the definition of "asset" property that is "generally exempt under nonbankruptcy law", the UFTA recognizes that exemption statutes are "limitations on the rights and remedies of unsecured creditors, and it is therefore appropriate to exclude property interests that are beyond the reach of unsecured creditors". *Id.* sec. 1, cmt. (2), 7A (Part II) U.L.A. 15. The comments indicate that for this purpose the question is whether the creditor could reach the property under either State or Federal law:

Nonbankruptcy law is the law of a *state or federal law* that is not part of the Bankruptcy Code, Title 11 of the United States Code. The definition of an "asset" thus does not include property that would be subject to administration for the benefit of creditors under the Bankruptcy Code unless it is subject under other applicable law, *state or federal*, to process for the collection of a creditor's claim against a single debtor. [*Id.*, 7A (Part II) U.L.A. 16; emphasis added.]

The foregoing comments strongly suggest that property is not "generally exempt" as to a particular creditor, and thus falls within the UFTA definition of "asset", if that creditor could reach the asset by judicial process. Other comments, however, suggest a different reading of the UFTA, at least for purposes of determining whether a debtor is insolvent:

The reference to "generally exempt" property in § 1(2)(ii) [of the UFTA] recognizes that all exemptions are subject to exceptions. Creditors having special rights against generally exempt property typically include claimants for alimony, taxes, wages, the purchase price of the property, and labor or materials that improve the property. See Uniform Exemptions Act § 10 and the accompanying Comment. *The fact that a particular creditor may reach generally exempt property by resorting to judicial process does not warrant its inclusion as an asset in determining whether the debtor is insolvent*. [*Id.*; emphasis added.]

Respondent urges us to construe these last-quoted comments narrowly, stating on supplemental brief: "This pro-creditor interpretation of the provision, narrowly tailored to determining whether a debtor is insolvent, increases the chances that liabilities exceed assets and, therefore, that the transferor will be deemed insolvent." It might be questioned whether "asset" should be defined differently for different purposes under the UFTA. Cf. UFTA sec. 1, 7A (Part II) U.L.A.

the law with respect to the subject of the law among states enacting it."

13 (stating that the definitions contained in this definitional section are for terms "As used in this [Act]"). Ultimately, however, we conclude that the official comments, which are simply too ambiguous to solve the interpretational problem presented, do not compel the conclusion that a creditor who is able to reach an insolvent debtor's asset through judicial process is foreclosed from avoiding the debtor's transfer of that asset under the UFTA merely because the asset is generally exempt as to other creditors. Such a conclusion would contravene the policy of the UFTA to provide "remedies for unsecured creditors against transfers that impede them in the collection of their claims." *Id.* cmt. (2), 7A (Part II) U.L.A. 15.

Consistent with this policy, the comments in question are best read, we believe, as clarifying that if a creditor cannot reach property that is "generally exempt" (e.g., by virtue of a homestead exemption that applies to most but not all creditors), then the property is not an "asset" for any purpose under the UFTA *as to that creditor*. Consequently, that creditor could not avoid a transfer of the property under the UFTA, notwithstanding that some other creditor, who was able to reach the property through some exception to the exemption, might be able to avoid a transfer.

Because the FUFTA is substantially identical to the UFTA, we believe that the same considerations pertain in the instant case. Consequently, insofar as the condominium was subject to judicial process for collection by the United States of Jerry Rubenstein's Federal income tax liabilities, it is properly considered to be an "asset" for purposes of the FUFTA.

Clearly the condominium was subject to judicial process by the United States to collect Jerry Rubenstein's taxes, notwithstanding any homestead exemption. The Code provides "two principal tools" to enforce the collection of unpaid taxes: lien-foreclosure suits in Federal District Court under section 7403(a) and administrative levy under section 6331(a). *United States v. Natl. Bank of Commerce*, 472 U.S. 713, 720 (1985). Pursuant to section 7403, as of the date of the transfer the United States could have enforced its lien on Jerry Rubenstein's condominium by filing suit in Federal District Court, which would have been empowered to order the condominium's sale, notwithstanding any homestead

protections. See *United States v. Rodgers*, 461 U.S. 677, 701 (1983). Alternatively, the IRS could have sought authorization of the Federal District Court to levy on the condominium. [10] See sec. 6334(a)(13)(B), (e)(1)(A); *United States v. Estes*, 450 F.2d 62, 65 (5th Cir. 1971) (stating that a "homestead exemption does not erect a barrier around a taxpayer's home sturdy enough to keep out the Commissioner of Internal Revenue"). [11]

We conclude that, as to the United States, the condominium was not "generally exempt under nonbankruptcy law" within the meaning of the FUFTA. Consequently, we conclude that the condominium was an "asset" within the meaning of the FUFTA. We next consider whether the transfer of this asset was constructively fraudulent pursuant to the FUFTA.

b. *Whether the Transfer Was Constructively Fraudulent*

Respondent contends that Jerry Rubenstein's transfer of the condominium to petitioner was constructively fraudulent under Fla. Stat. Ann. sec. 726.106(1). [12] This section (reproduced *supra* note 6) provides in pertinent part that a transfer by a debtor is fraudulent as to a creditor if: (1) The creditor's claim arose before the transfer was made; (2) the debtor did not receive a "reasonably equivalent value" in exchange for the transfer; and (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

The parties have stipulated that as of February 21, 2003, Jerry Rubenstein owed the United States $112,420 for unpaid Federal income taxes, penalties, and interest for his taxable years 1994 through 2002. Therefore, respondent's claim arose before the transfer was made. The parties have

---

[10] These conclusions are not altered by the fact that in calculating Jerry Rubenstein's reasonable collection potential before the transfer, the IRS assigned zero net realizable equity to the condominium, apparently treating it as exempt for this purpose.

[11] Moreover, the Florida homestead exemption does not spare a residence from a Federal forfeiture. *United States v. Lot 5, Fox Grove*, 23 F.3d 359 (11th Cir. 1994).

[12] Alternatively, respondent argues that if we were to find that the condominium's transfer was for an antecedent debt that Jerry Rubenstein owed petitioner, the transfer was constructively fraudulent under Fla. Stat. Ann. sec. 726.106(2), which deals with transfers by an insolvent debtor to an "insider" (defined under Fla. Stat. Ann. sec. 726.102(7)(a)(1) to include a "relative of the debtor") for an "antecedent debt". Because we conclude that there was no antecedent debt and that the transfer was constructively fraudulent under Fla. Stat. Ann. sec. 726.106(1), we need not and do not address respondent's alternative argument.

further stipulated that Jerry Rubenstein was insolvent at the time of the transfer. The issue, then, is whether Jerry Rubenstein received reasonably equivalent value from petitioner in exchange for the transfer.

Petitioner contends that the care he has provided to his father constitutes fair consideration for the condominium. Although petitioner's care of his father is commendable, unfortunately for petitioner it does not, under the relevant legal standard, constitute "reasonably equivalent value" for the transfer of the condominium. Under the FUFTA, "Value" is given for a transfer if "property is transferred or an antecedent debt is secured or satisfied". Fla. Stat. Ann. sec. 726.104(1). Under these provisions, "value" does not include "an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person." *Id*. Consistent with the UFTA's purpose "to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors", these provisions reflect that "Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." UFTA sec. 3, cmt. (2), 7A (Part II) U.L.A. 48.

Petitioner transferred no property, or only minimal property, in exchange for the condominium. [13] Petitioner appears to concede that the care he provided his father gave rise to no debt on his father's part. Petitioner testified: "The things I did, I did out of love. I never felt this was a debt." Indeed, Florida law presumes that a parent is not obligated to pay a child, though of full age, for services the child might perform while living with the parent at home as one of the family. See *Mills v. Joiner*, 20 Fla. 479, 492–493 (1884); *Della Ratta v. Della Ratta*, 927 So. 2d 1055, 1058–1059 (Fla. Dist. Ct. App. 2006). The presumption can be overcome by proof of a special contract or by an express or implied promise. *Mills v. Joiner*, *supra* at 492–493; *Della Ratta v. Della Ratta*, *supra* at 1059. Such proof is absent here.

Petitioner suggests that his father had a moral obligation to compensate him for his caregiving. The satisfaction of a

---

[13] Although the warranty deed recites that petitioner paid $10 for the condominium, petitioner testified that he did not recall whether he had actually paid his father the $10. We are not persuaded that petitioner paid the $10. In any event, even if petitioner had paid the $10, it would not constitute "reasonably equivalent value" for the condominium, which had a fair market value of $41,000 on the date of the transfer.

moral obligation, however, does not constitute "value" within the meaning of the FUFTA. Cf. *Henkel v. Green*, 268 Bankr. 628, 651 (Bankr. M.D. Fla. 2001) (finding that any moral or family obligation to pay for a daughter's wedding or to give her a wedding gift was not reasonably equivalent value for purposes of Bankruptcy Code section 548). [14]

Petitioner argues that, in transferring the condominium, neither he nor his father intended to hinder the collection of taxes. Because respondent has shown that the elements of Fla. Stat. Ann. sec. 726.106(1) have been met, however, the transfer is treated as constructively fraudulent; no showing of actual fraudulent intent is required. See *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1499 (11th Cir. 1997).

## B. *Equitable Estoppel*

In 2002 respondent rejected Jerry Rubenstein's offer-in-compromise, determining that he had offered less than his reasonable collection potential. A table attached to the determination notice showed Jerry Rubenstein's "net realizable equity" in the condominium to be zero, apparently treating it as "exempt". As a result, petitioner argues, respondent should be equitably estopped from now asserting transferee liability against him. We disagree.

As a general matter, "the doctrine of equitable estoppel is applied against * * * [the Commissioner] 'with the utmost caution and restraint.'" *Boulez v. Commissioner*, 76 T.C. 209, 214–215 (1981) (quoting *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617–618 (1977)), affd. 810 F.2d 209 (D.C. Cir. 1987). The Court of Appeals for the Eleventh Circuit, to which any appeal of this case would lie, has questioned whether equitable estoppel can ever be applied against the Government. See *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1318 (11th Cir. 2006) ("it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be."). The Court of Appeals has also held that insofar as a party may be permitted, as a matter of law, to invoke the estoppel doctrine against the Government, that party must

[14] Fla. Stat. Ann. sec. 726.104(1), defining "value" for purposes of the FUFTA, is identical to UFTA sec. 3(a). Sec. 3(a) of the UFTA, in turn, is adapted from Bankruptcy Code sec. 548(d)(2)(A). See UFTA sec. 3, cmt. (2), 7A (Part II) U.L.A. 48.

prove four elements: "(1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the Government." *United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003).

Petitioner has proven none of these elements. In the first instance, we do not see how the complained-of communication from the IRS to Jerry Rubenstein induced petitioner to do anything. Nor are we persuaded that petitioner relied upon the communication to his detriment. After all, it was Jerry Rubenstein, not petitioner, who transferred the condominium. [15] Cf. *Boulez v. Commissioner*, *supra* at 215 (holding that to establish equitable estoppel against the Government, there must be detrimental reliance by the party claiming the benefit of the doctrine). We also do not believe that there was any willfulness or negligence involved in the complained-of communication. [16] Nor has petitioner shown affirmative misconduct by the Government. "Affirmative misconduct requires more than governmental negligence or inaction". *United States v. McCorkle*, *supra* at 1297. Rather, affirmative misconduct requires ongoing active misrepresentations or a pervasive pattern of false promises, as opposed to an isolated act of providing misinformation. *Watkins v. U.S. Army*, 875 F.2d 699, 708 (9th Cir. 1989). The IRS communication of which petitioner complains falls far short of affirmative misconduct. [17]

---

[15] Petitioner argues that he has suffered detriment in that, in addition to any transferee liability he may have, he is obligated to repay money that he allegedly borrowed through his revolving line of credit, which is secured by a mortgage on the condominium. Imposition of transferee liability, however, would leave petitioner no worse off than if he had never received the condominium, since he has gained ownership of the condominium as well as any cash borrowed through his revolving line of credit.

[16] Respondent did not misrepresent that the condominium was exempt from levy. A taxpayer's principal residence is exempt from levy until a Federal District Court approves the levy. Sec. 6334(a)(13)(B), (e)(1)(A). Petitioner argues that the Internal Revenue Manual (IRM) nevertheless required that respondent include the equity in the condominium in his father's reasonable collection potential. The IRM as in effect at relevant times stated that "Equity in real estate is included in calculating the taxpayer's reasonable collection potential and in an acceptable offer amount." IRM pt. 5.8.5.3.11(1) (Nov. 1, 2000). Respondent has acknowledged that the IRS "sometimes exercises the discretion to accept offers for less than RCP [reasonable collection potential] by subtracting the value of a taxpayer's residence from [reasonable collection potential]", which it did in this case. By excluding the value of the condominium from Jerry Rubenstein's RCP, the IRS did not engage in a "false representation or wrongful, misleading silence", which this Court has held to be a requisite element of a claim for equitable estoppel against the Government. See *Norfolk S. Corp. v. Commissioner*, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998).

[17] Petitioner also complains on brief that respondent has been unresponsive to his discovery

Continued

C. *Conclusion*

Pursuant to section 6901(a), petitioner has transferee liability of $41,000 plus interest for unpaid tax liabilities, penalties, and interest owed by Jerry Rubenstein for his taxable years 1998 through 2002.[18] We have considered all contentions that petitioner has raised for a contrary result. Contentions not expressly addressed herein we find to be without merit or unnecessary to reach.

To reflect the foregoing and respondent's concession,

*Decision will be entered under Rule 155.*

_____
requests in this litigation. These untimely raised complaints provide no basis for invoking equitable estoppel against respondent's determination of transferee liability.

[18] The parties have not addressed the manner in which interest is to be computed. We expect this matter to be resolved in the Rule 155 computation.